(305 P.3d 35)

No. 108,930

STATE OF KANSAS, *Appellant*, v. CARL VRABEL, *Appellee*.

Opinion filed June 14, 2013.

*Shawn E. Minihan*, assistant district attorney, *Stephen M. Howe*, district attorney, and *Derek Schmidt*, attorney general, for appellant.

*Jonathan A. Bortnick*, of Bortnick, McKeon, Sakoulas & Schanker, P.C., of Kansas City, Missouri, for appellee.

Before MALONE, C.J., PIERRON, J., and JAMES L. BURGESS, District Judge Retired, assigned.

PIERRON, J.: The State appeals from the district court's suppression of the evidence obtained through a controlled drug buy conducted by police outside their jurisdiction.

On July 26, 2011, a confidential informant (CI) advised Corporal Ivan Washington of the Prairie Village Police Department (PVPD)

that Carl Vrabel was selling hash. Cpl. Washington had the CI arrange to purchase hash from Vrabel at a grocery store in Leawood, Kansas. Cpl. Washington did not know where Vrabel was when he spoke to the CI on the phone. The grocery store was selected because it was located on a main road into Missouri, where Vrabel lived, and was one of law enforcement's traditional buy locations.

At around 10:26 a.m. the next day, Cpl. Washington called Lieutenant Kevin Cauley, the operations commander of the Leawood Police Department (LPD), to notify him of the drug investigation. LPD had participated in previous controlled buys.

At an undisclosed location in Prairie Village, the PVPD gave the CI $120 of marked buy money and wired the CI with audio equipment. Then they proceeded to the buy location. At 1:20 p.m., Cpl. Washington called Lt. Cauley again to notify him they were en route to Leawood.

At around 1:24 p.m., the PVPD surveilled the controlled buy. Cpl. Washington testified LPD officers were not present and provided no assistance, whereas Lt. Cauley testified that he was not sure whether LPD provided any assistance but thought they stayed out of the area. After the CI parked in a stall at the grocery store, a vehicle pulled into a neighboring stall. Vrabel exited the vehicle and entered the CI's vehicle. PVPD officers listened as the CI paid for and Vrabel furnished the hash. Vrabel exited the CI's vehicle, entered his own vehicle, and drove away.

The PVPD did not contact Vrabel that day. But they did meet the CI at an undisclosed location to retrieve the hash and wire. At 1:28 p.m., Cpl. Washington called Lt. Cauley a third time to notify him that the controlled buy was successful, no one was hurt, and PVPD was leaving his city.

The State charged Vrabel with distribution of marijuana and use of a communication facility to sell a controlled substance. Before trial, Vrabel filed a motion to suppress, arguing that PVPD unlawfully exercised its jurisdiction by "set[ting] up and investigat[ing] a crime" in Leawood. In granting the motion, the district court made the following finding:

"The Prairie Village officers obtained the challenged evidence through an investigation and controlled drug transaction that occurred in Leawood, Kansas, therefore, they exercised their powers as law enforcement officers outside of their jurisdiction pursuant to K.S.A. 22-2401a(2). There was no request for assistance from Leawood officers, and the fresh pursuit exception does not apply. Further, subsection (7) of K.S.A. 22-2401a and K.S.A. 22-2403 do not apply. As a result, the Prairie Village officers obtained the drug evidence and the conversation between the CI and Defendant unlawfully."

The State filed a motion to reconsider. In denying the motion, the district court made these findings: (1) No case law has upheld an independent police investigation without the cooperation of the other jurisdiction; (2) K.S.A. 22-2401a is the controlling statute and it does not deal strictly with arrests; (3) No statutory basis exists that allows police to go outside of their jurisdiction to perform unilateral investigations; and (4) The investigation cannot be considered a citizen's arrest since the police used the 'color of their office' to initiate the investigation.

The State filed for an interlocutory appeal which was allowed.

The State's argument is threefold: (1) K.S.A. 22-2401a does not apply to a police officer's investigation of a crime; (2) even if it does apply, either the "request for assistance" or the "bordering municipalities" exception applies; and (3) even if no exception applies, suppression is not the appropriate remedy for violation of the statute.

An appellate court uses a bifurcated standard when reviewing a district court's decision on a motion to suppress. The factual underpinnings of the suppression decision are reviewed under a substantial competent evidence standard, and the ultimate legal conclusion drawn from those facts is reviewed de novo. An appellate court does not reweigh evidence. When the facts are undisputed, an appellate court exercises unlimited de novo review of the district court's legal conclusion. *State v. Edgar*, 296 Kan. 513, 519-20, 294 P.3d 251 (2013). Moreover, interpretation of K.S.A. 22-2401a is a question of law over which an appellate court exercises unlimited review. *State v. Mendez*, 275 Kan. 412, 416, 66 P.3d 811 (2003).

The jurisdiction of municipal police officers is governed by K.S.A. 2012 Supp. 22-2401a, which provides in relevant part:

"(2) Law enforcement officers employed by any city may exercise their powers as law enforcement officers:

(a) Anywhere within the city limits of the city employing them and outside of such city when on property owned or under the control of such city; and

(b) in any other place when a request for assistance has been made by law enforcement officers from that place or when in fresh pursuit of a person."

### The Plain Language of K.S.A. 2012 Supp. 22-2401a(2) Limits the Authority of Municipal Officers to Exercise Their Powers as Law Enforcement Officers, and Does Not Expand Their Authority to Investigate Suspected Criminals

"The most fundamental rule of statutory construction is that the intent of the legislature governs if that intent can be ascertained. An appellate court's first attempt to ascertain legislative intent is through an analysis of the language employed, giving ordinary words their ordinary meaning. If a statute is plain and unambiguous, an appellate court does not need to speculate further about legislative intent and, likewise, the court need not resort to canons of statutory construction or legislative history." *State v. Wells*, 296 Kan. 65, Syl. ¶ 9, 290 P.3d 590 (2012).

## A law enforcement officer is

"any person who by virtue of office or public employment is vested by law with a duty to maintain public order or to make arrests for violation of the laws of the state of Kansas or ordinances of any municipality thereof . . . *while acting within the scope of their authority*." (Emphasis added.) K.S.A. 22-2203(13).

" ' "Absent guidelines, police officers are vested with the necessary discretionary authority to act in an appropriate manner to protect the public." ' [Citation omitted.]" *Mills v. City of Overland Park*, 251 Kan. 434, 446, 837 P.2d 370 (1992).

Such guidelines limiting the authority of Kansas police officers include the Fourth Amendment to the United States Constitution and § 15 of the Kansas Constitution Bill of Rights (no unreasonable searches or seizures), K.S.A. 22-2401 (circumstances under which officer may arrest person), K.S.A. 22-2402 (circumstances under which an officer may stop a person), K.S.A. 22-2405 (how to effect arrest); K.S.A. 22-2408 (circumstances under which officer may serve notice to appear), and the key to this case, K.S.A. 2012 Supp. 22-2401a (where officers may exercise their powers).

Generally, municipal officers are authorized to exercise their law enforcement powers within their city of employment, on property owned or control by the city, and in any other place when in fresh pursuit or when local law enforcement has requested assistance. K.S.A. 2012 Supp. 22-2401a(2). But the legislature has expanded the authority of municipal officers to exercise their law enforcement powers in certain situations. See K.S.A. 2012 Supp. 22-2401a(5) ("In addition to the areas where law enforcement officers may exercise their powers pursuant to subsection [2], law enforcement officers of any jurisdiction within Johnson or Sedgwick county may exercise their powers as law enforcement officers in any area within the respective county *when executing a valid arrest warrant or search warrant.*" [Emphasis added.]); K.S.A. 2012 Supp. 22-2401a(7) ("In addition to the areas where law enforcement officers may exercise their powers pursuant to subsection [2], law enforcement officers of any jurisdiction within Johnson county may exercise their powers as law enforcement officers in any adjoining city within Johnson county *when any crime, including a traffic infraction, has been or is being committed by a person in view of the law enforcement officer.*" [Emphasis added.]).

The plain language of K.S.A. 2012 Supp. 22-2401a(2) limits the authority of municipal officers to exercise their powers as law enforcement officers. And the legislature has not carved out additional areas where officers may exercise those powers to investigate a suspected criminal. Therefore, we must decide whether the PVPD's drug buy was a lawful exercise of authority.

*The PVPD Had Authority as Law Enforcement Officers to Conduct the Controlled Buy Because Their Agreement with the LPD Constituted a "Request for Assistance" Under K.S.A. 2012 Supp. 22-2401a(2)(B)*

Kansas appellate courts construe statutes in such a way as to avoid unreasonable results. *State v. Turner*, 293 Kan. 1085, 1088, 272 P.3d 19 (2012).

The Kansas Supreme Court has held that in determining whether a "request for assistance" was made under K.S.A. 22-2401a(2)(b), it is irrelevant whether the requesting department had

an actual need for assistance or whether such need could have been met by its own law enforcement officers. *State v. Ross*, 247 Kan. 191, Syl. ¶ 2, 795 P.2d 937 (1990). The Kansas Court of Appeals has held that oral agreements between law enforcement departments constitute a "request for assistance." See *State v. Rowe*, 18 Kan. App. 2d 572, 574, 856 P.2d 1340 (1993), *rev. denied* 253 Kan. 863 (1993); *State v. Davidson*, No. 98,862, 2008 WL 4291617, at *1-4 (Kan. App. 2008) (unpublished opinion).

In *Rowe*, a Wabaunsee County resident called 911 to report a suspicious vehicle in her driveway. The police department of Wamego, a city outside Wabaunsee County, went to investigate. A Wabaunsee County Sheriff's officer heard the radio traffic of the Wamego police officers and responded over the radio that he was en route. Meanwhile, the Wamego officers found a man passed out at the residence. After they roused him, he tried to leave the scene so they took his car keys. When he became combative, they physically restrained him. Then the Wabaunsee County Sheriff's officer arrived and conducted his investigation, which resulted in charges of driving under the influence of alcohol (DUI) and driving while suspended.

The *Rowe* court held that the long-standing oral agreement for assistance between the requesting sheriff's department and a city police department was a "request for assistance." 18 Kan. App. 2d 572, Syl. ¶ 2. Admittedly construing the statute to avoid unreasonable results, the court reasoned:

"[T]he term 'request for assistance' should be interpreted to include agreements similar to the one between the Wabaunsee County sheriff and the City of Wamego chief of police. To do otherwise would severely limit county sheriff's officers' ability to respond quickly and efficiently to emergencies. The agreement between the Wabaunsee County sheriff and the Wamego chief of police is narrowly drawn and requests assistance only in situations where an emergency exists, if near the county line, and until a Wabaunsee County sheriff's officer arrives." 18 Kan. App. 2d at 574.

The court also noted that an implied request could constitute a "request for assistance," but the acquiescence or acceptance of assistance in this case did not. 18 Kan. App. 2d at 573-74.

In *Davidson,* a Hiawatha police officer followed a vehicle that was being driven erratically in Hiawatha. As he exited the city, the Hiawatha officer radioed the Brown County Sheriff's Department to inform it of a potentially dangerous situation. Because the Brown County deputy was 20 minutes away, he instructed the Hiawatha officer to follow the vehicle and stop it if necessary. After observing the vehicle cross the fog line, the Hiawatha officer initiated a traffic stop and conducted a DUI investigation. The Brown County deputy arrived at the scene as the Hiawatha officer was arresting the driver.

The *Davidson* court held that the long-standing agreement between the requesting county sheriff's department and a city police department was a "request for assistance." 2008 WL 4291617, at *3. The court, construing the statute to avoid unreasonable results, reasoned:

"Brown County's oral agreement with the Hiawatha Police Department is a reasonable means to protect the health and safety of its citizens and to ensure a swift response to emergency situations. Lamar Shoemaker, the Brown County Sheriff, testified that the county has approximately 576 square miles and that the department only has six road deputies to patrol it. The agreement is hardly too broad since the decision is made on a case-by-case basis that allows for immediate action when someone's safety is at risk. As Shoemaker testified, 'It's not automatic.'" 2008 WL 4291617, at *3.

The court also found that the jurisdiction requesting assistance need not initiate the call. 2008 WL 4291617, at *2.

Here, Cpl. Washington testified that it was "[n]ormal protocol" to call Lt. Cauley to notify him that PVPD officers were "coming to his city for a narcotics investigation," and to offer Leawood police the "opportunity . . . to come out . . . or refuse to." He stated the grocery store was a location that had been "traditionally use[d]" for drug buys, and other locations in Prairie Village also had been used for drug buy. He also stated LPD had participated in previous drug buys by conducting surveillance and takedowns. Finally, Cpl. Washington explained:

"Normally, in drug units we have contact people. So people know . . . if you're coming to the City of Prairie Village and you do a narcotics investigation[], the other narcotics supervisors know that I was the point of contact. So hypothetically,

if I go to Overland Park, I'm calling Tom Smith. If I'm going to the County, I'm calling Tom Reddin; Lenexa is Dan Ousley . . . ; Shawnee is Gary Hall. So the list goes on and on. But we all know the point of contact."

Lt. Cauley described the arrangement between the LPD and PVPD:

"I typically ask [Cpl. Washington] what kind of assistance he would like from us. Sometimes they will be in the area making a drug buy and sometimes they would like to do it covertly and I ask our black and white cars to stay out of the area. And sometimes they will ask for our assistance on a buy bust and they want patrol cars in the area. And sometimes they will just want some covert assistance and I might have a detective or two go over there and stand by in the area."

He stated that when he receives a call from PVPD, he decides whether to dispatch LPD officers to the drug buy. Finally, Lt. Cauley explained he could not be sure his officers did not surveil the drug buy at issue because no reports had been generated and he had not asked them.

This testimony reveals that there was at least an implied agreement for drug-buy assistance between the PVPD and the LPD. Lt. Cauley's action should not be considered acquiescence because, unlike the officer in *Rowe* who heard of the assistance over the radio, Lt. Cauley was called before the assistance was provided. It is irrelevant that Cpl. Washington initiated the request, like the officer in *Davidson* did after observing the drunk driver. Just as refusing to construe the agreements in *Rowe* and *Davidson* as requests for assistance would have severely limited the requesting departments' ability to respond quickly to emergencies and protect their citizens, refusing to construe the agreement in this case as a request for assistance would limit the PVPD's and LPD's ability to combat drug crime and protect their citizens. Finally, like the agreement in *Davidson*, the drug-buy agreement is not too broad since Lt. Cauley makes decisions on a case-by-case basis.

Construing the statute to avoid unreasonable results, we hold the agreement between the PVPD and the LPD constituted a "request for assistance" under K.S.A. 2012 Supp. 22-2401a(2)(b) and, therefore, the PVPD's drug buy was a lawful exercise of its law enforcement authority.

Reversed and remanded for further proceedings.

\* \* \*

MALONE, C.J., concurring: I agree with the majority that the district court erred by granting Carl Vrabel's motion to suppress the evidence, but I reach this conclusion for different reasons than those expressed by the majority. I respectfully disagree with the majority that the Prairie Village police officers were authorized to organize and conduct the controlled drug buy in Leawood, Kansas, under the "request for assistance" exception in K.S.A. 2012 Supp. 22-2401a(2)(b). But because Vrabel's constitutional rights were not violated by the police officers' conduct, I conclude that suppression of the evidence is not the appropriate remedy for the statutory violation.

Vrabel was charged with distribution of marijuana arising from the controlled drug buy on July 27, 2011. He also was charged with use of a communication facility to sell a controlled substance arising from his telephone conversation with the confidential informant on July 26, 2011. Vrabel filed a motion "to suppress all evidence obtained from him on July 27, 2011 by a confidential informant under the direction of the Prairie Village, Kansas Police Department." Specifically, the motion sought to suppress "a bag of alleged Hash weighing 11.4 grams as well as the audio recording of the transaction and any other surveillance photos of the scene." The motion argued that the evidence was obtained in violation of K.S.A. 2012 Supp. 22-2401a and was therefore inadmissible.

After receiving testimony from Corporal Ivan Washington of the Prairie Village Police Department, the district court granted the motion to suppress. The State filed a motion to reconsider and presented numerous arguments as to why the evidence should not be suppressed including the argument that the exclusionary rule does not apply to violations of a statute. After receiving additional testimony from Washington and Lieutenant Kevin Cauley of the Leawood Police Department, the district court denied the motion to reconsider, making detailed findings in a written order. The district court did not address the State's argument that suppression of the evidence was not the appropriate remedy for a violation of a statute.

On appeal, the State claims: (1) K.S.A. 2012 Supp. 22-2401a does not apply to a police officer's investigation of a crime; (2) even if the statute does apply, either the "request for assistance" or the "bordering municipalities" exception applies; and (3) even if no exception applies, suppression is not the appropriate remedy for violation of the statute. Issues raised by the State in district court but not briefed on appeal are deemed waived and abandoned. See *State v. McCaslin*, 291 Kan. 697, 709, 245 P.3d 1030 (2011).

The jurisdiction of law enforcement officers in Kansas is governed by K.S.A. 2012 Supp. 22-2401a, which provides in relevant part:

"(2) Law enforcement officers employed by any city may exercise their powers as law enforcement officers:
(a) Anywhere within the city limits of the city employing them and outside of such city when on property owned or under the control of such city; and
(b) in any other place when a request for assistance has been made by law enforcement officers from that place or when in fresh pursuit of a person.
. . . .
"(7) In addition to the areas where law enforcement officers may exercise their powers pursuant to subsection (2), law enforcement officers of any jurisdiction within Johnson County may exercise their powers as law enforcement officers in any adjoining city within Johnson County when any crime, including a traffic infraction, has been or is being committed by a person in view of the law enforcement officer."

The State first argues that K.S.A. 2012 Supp. 22-2401a does not apply here because the Prairie Village police officers did not exercise their powers as law enforcement officers when they organized and conducted the controlled drug buy in the city of Leawood. The State argues that K.S.A. 2012 Supp. 22-2401a applies only to searches and seizures and the statute does not limit a police officer's authority to investigate crimes in a neighboring municipality.

On this point, I agree with the majority that the Prairie Village police officers were exercising their powers as law enforcement officers when they organized and conducted the controlled drug buy in Leawood. A "law enforcement officer" is "any person who by virtue of office or public employment is vested by law with a duty to maintain public order or to make arrests for violation of the laws of the state of Kansas or ordinances of any municipality

. . . ." K.S.A. 22-2202(13). Kansas law does not specifically address whether a police investigation such as the one here involving a controlled drug buy with a confidential informant constitutes an exercise of the powers of law enforcement.

In *State v. Stuart*, 855 P.2d 1070 (Okla. Crim. 1993), a case similar to the one here, a confidential informant notified a Sapulpa, Oklahoma, police officer that the defendant was selling marijuana from his home which was located outside of Sapulpa. The officer went with the informant to the defendant's residence and arranged a controlled narcotics buy. The officer observed the informant go inside the defendant's residence and return with marijuana. The information was used to obtain a search warrant for the defendant's residence. The search warrant was executed by Sapulpa officers along with Creek County Sheriff's officers who had proper jurisdiction over the defendant. The district court suppressed the evidence seized pursuant to the search warrant.

The Oklahoma Court of Criminal Appeals affirmed the district court's decision and found that the affidavit for the search warrant was fatally defective because the evidence supporting it was obtained by officers exercising the powers of their office outside their jurisdiction. 855 P.2d at 1074. The court stated:

"The evidence shows that *Officer Wall did more than merely observe the transaction, he organized and conducted the controlled purchase of marijuana* . . . .

"*Walls' active role* in arranging and monitoring a controlled purchase of narcotics outside his jurisdiction, *a transaction which from its inception was outside his jurisdiction,* is clearly distinguishable from . . . participating in an ongoing investigation which was begun within the officer's jurisdiction.

. . . .

"*The Sapulpa city police officers in this case were acting outside their jurisdiction, and as such, outside the scope of their authority.* They should have notified the Sheriff's Office of Creek County, or any other law enforcement agency having jurisdiction outside the city limits, to conduct the controlled purchase of narcotics. This practice . . . ensures proper coordination between law enforcement agencies and protection of the officers involved in the investigations." (Emphasis added.) 855 P.2d at 1073-74.

Whether a municipal police officer is exercising his or her powers as a law enforcement officer must be determined on a case-by-case basis. I agree with the State that K.S.A. 2012 Supp. 22-2401a

does not necessarily prohibit a police officer from investigating a crime in a neighboring municipality. For example, if a Prairie Village police officer was investigating a crime committed in Prairie Village and needed to enter Leawood in order to interview a witness, I do not believe that this action would be unlawful within the meaning of K.S.A. 2012 Supp. 22-2401a(2). But here the Prairie Village police officers organized and conducted a controlled drug buy within the city of Leawood. The officers put an audio recording wire on the confidential informant, gave money from their "buy fund" to the informant, and recovered the drugs from the informant after the buy was completed. Guided by the persuasive authority of *Stuart*, I conclude that the Prairie Village police officers were exercising their powers as law enforcement officers outside their jurisdiction. The conduct was lawful only if the officers met one of the exceptions contained within K.S.A. 2012 Supp. 22-2401a.

The State's primary argument is that even if K.S.A. 2012 Supp. 22-2401a applies, the Prairie Village police officers were authorized to conduct the controlled drug buy in Leawood under the "request for assistance" exception in K.S.A. 2012 Supp. 22-2401a(2)(b). This subsection provides that law enforcement officers employed by any city may exercise their powers as law enforcement officers in any other place "when a request for assistance has been made by law enforcement officers from that place."

Based on the plain language of K.S.A. 2012 Supp. 22-2401a(2)(b), a law enforcement officer employed by a city may exercise his or her powers as a law enforcement officer in any other place when a request for assistance has been made by law enforcement officers *from that place*. This exception is inapplicable here because law enforcement officers from Leawood never requested assistance from the Prairie Village police officers. Instead, Corporal Washington of the Prairie Village Police Department called Lieutenant Cauley of the Leawood Police Department "to notify him" of the drug investigation. The Prairie Village officers conducted the controlled drug buy on their own and the Leawood police officers were not present and provided no assistance. Although Cauley did not object to the arrangement, it cannot be characterized

as a request for assistance made by law enforcement officers from Leawood.

The majority relies on two cases that are distinguishable from the present facts. In *State v. Rowe*, 18 Kan. App. 2d 572, 856 P.2d 1340, *rev. denied* 253 Kan. 863 (1993), a Wabaunsee County resident called 911 to report a suspicious vehicle in her driveway. Based on a long-standing agreement to respond to emergency calls, police officers from Wamego, a city outside of Wabaunsee County, went to investigate because they were close to the scene. A Wabaunsee County Sheriff's deputy heard the radio traffic of the Wamego police officers and responded that he also was en route. The Wamego officers arrived first and physically restrained the defendant who was found inside the suspicious vehicle. The sheriff's deputy soon arrived and conducted an investigation which resulted in the defendant's arrest for driving under the influence of alcohol (DUI) and driving with a suspended license. The defendant filed a motion to suppress the evidence, which the trial court denied, based on the argument that the Wamego officers acted outside their jurisdictional limits.

The *Rowe* court held that the long-standing oral agreement for assistance between neighboring law enforcement agencies was a "request for assistance" within the meaning of 22-2401a(2)(b). 18 Kan. App. 2d at 574. The court determined that the agreement between the sheriff's office and the Wamego police was "narrowly drawn and requests assistance only in situations where an emergency exists, if near the county line, and until a Wabaunsee County sheriff's officer arrives." 18 Kan. App. 2d at 574. Thus, the court upheld the trial court's decision denying the motion to suppress. 18 Kan. App. 2d at 575.

*Rowe* is distinguishable from the present facts. In *Rowe*, Wamego officers responded to an emergency call outside the city limits of Wamego based on a long-standing agreement that the nearest law enforcement agency would provide assistance to an emergency call. The Wabaunsee County Sheriff's officer ultimately arrived at the scene to make the arrest. Here, no emergency existed and the Prairie Village police officers unilaterally decided to organize and conduct a controlled drug buy outside their city limits. Leawood

police officers were not present at the drug buy and provided no assistance to the Prairie Village police officers.

In *State v. Davidson*, No. 98,862, 2008 WL 4291617 (Kan. App. 2008) (unpublished opinion), a Hiawatha police officer followed a vehicle that was being driven erratically in Hiawatha. Based·on a long-standing agreement between the Hiawatha Police Department and the Brown County Sheriff's Department, the Hiawatha police officer radioed the sheriff's department to inform it of a dangerous situation. Because the sheriff's deputy was 20 minutes away, he instructed the Hiawatha officer to follow the vehicle and stop it if necessary. After observing the vehicle cross the fog line, the Hiawatha officer stopped the vehicle and conducted a DUI investigation. The sheriff's deputy arrived at the scene as the Hiawatha officer was arresting the driver.

The *Davidson* court held that the long-standing agreement between the neighboring law enforcement agencies was a "request for assistance" under 22-2401a(2)(b), especially when the sheriff's deputy had specifically instructed the Hiawatha officer to follow the vehicle and stop it if necessary. 2008 WL 4291617, at *3. The court stated that the Brown County sheriff's oral agreement with the Hiawatha police constituted "a reasonable means to protect the health and safety of its citizens and to ensure a swift response to emergency situations." 2008 WL 4291617, at *3.

*Davidson* is clearly distinguishable from the present facts. *Davidson* involved an emergency situation where the Hiawatha police officer observed a vehicle that was being driven erratically in Hiawatha. When the Hiawatha police officer radioed the sheriff's department, the deputy instructed him to follow the vehicle and stop it if necessary, which constituted a request for assistance from the deputy. Ultimately, the sheriff's deputy arrived at the scene and assisted in the DUI arrest. Here, there was no emergency situation, no request by the Leawood officers for assistance, and no participation by the Leawood officers in the controlled drug buy within their city.

In terms of whether the "request for assistance" exception applies, Vrabel's case is similar to *State v. Sodders*, 255 Kan. 79, 872 P.2d 736 (1993). In *Sodders*, two Overland Park police detectives

obtained a search warrant for the defendant's apartment in Lenexa, Kansas. Prior to executing the warrant, the Overland Park detectives contacted a Lenexa police sergeant, told him they were going to execute a search warrant in Lenexa, and requested assistance. The Lenexa Police Department dispatched three uniformed officers to provide security at the apartment. All five officers entered the apartment, and the two Overland Park detectives executed the search warrant. The three Lenexa officers were there for security only and did not participate in the search.

The defendant filed a motion to suppress the evidence which was granted by the district court, finding that the Overland Park detectives executed the warrant outside their jurisdiction in violation of K.S.A. 22-2401a. The Kansas Court of Appeals affirmed and the Supreme Court granted the State's petition for review. The Kansas Supreme Court rejected the State's argument that the search was authorized under the "request for assistance" exception, noting that the mere presence of Lenexa officers, even though at the request of the Overland Park detectives, did not meet the requirements of the statute. 255 Kan. at 84. Quoting from the Court of Appeals decision, the Supreme Court concluded:

" '[H]ad it chosen to do so, the Kansas Legislature could have adopted a rule of unlimited jurisdiction for police officers, or a rule dependent upon notification or presence or participation by local officers. But, instead, the legislature set out a "request for assistance" rule in 22-2401a. This court must give effect to the statute and apply the rule adopted by the legislature.' [Citation omitted.]" 255 Kan. at 84-85.

The specific ruling in *Sodders* was short-lived. In 1994, the Kansas Legislature amended K.S.A. 22-2401a to provide an exception that law enforcement officers in Johnson or Sedgwick County may exercise their powers as law enforcement officers in any area within their respective county when executing a valid arrest warrant or search warrant, to the extent necessary to execute such warrants. L. 1994, ch. 286, sec. 1 (now codified at K.S.A. 2012 Supp. 22-2401a[5]); see *State v. Mendez*, 275 Kan. 412, 418, 66 P.3d 811 (2003). Nevertheless, the Supreme Court's interpretation of the "request for assistance" exception in *Sodders* is applicable to Vrabel's case.

Based on the record herein, there was no emergency that required the Prairie Village police officers to organize and conduct a controlled drug buy in the city of Leawood. This was not a situation where the Prairie Village officers were responding to a request for assistance made by law enforcement officers from Leawood. Instead, Prairie Village officers merely "notified" the Leawood Police Department of their intent to conduct a controlled drug buy within the city of Leawood. The Leawood police raised no objection to the arrangement. But under the undisputed facts, the Prairie Village police officers exercised their powers as law enforcement officers outside their jurisdiction and they were not authorized to do so under the "request for assistance" exception in K.S.A. 2012 Supp. 22-2401a(2)(b).

Next, the State briefly argues that even if K.S.A. 2012 Supp. 22-2401a applies, the facts herein fall within the "bordering municipalities" exception in K.S.A. 2012 Supp. 22-2401a(7). This subsection provides that law enforcement officers of any jurisdiction within Johnson County may exercise their powers as law enforcement officers in any adjoining city within Johnson County "when any crime, including a traffic infraction, has been or is being committed by a person in view of the law enforcement officer."

K.S.A. 2012 Supp. 22-2401a(7) is intended to allow law enforcement officers in Johnson County to make an arrest outside their jurisdiction when any crime, including a traffic infraction, is committed in view of the officer. But as the district court noted, the Prairie Village officers did not view any crime committed in their presence other than the crime they staged, and the officers made no immediate arrest after viewing the crime. Furthermore, the Prairie Village officers put an audio recording wire on the confidential informant, gave money from their "buy fund" to the informant, and recovered the drugs from the informant after the buy was completed. These actions constituted an exercise of their powers as law enforcement officers which were not authorized under the "bordering municipalities" exception in K.S.A. 2012 Supp. 22-2401a(7).

Finally, the State argues that even if no exception applies authorizing the Prairie Village police officers to exercise their powers

as law enforcement officers outside their jurisdiction, suppression of the evidence is not the appropriate remedy for violation of the statute. Relying on *United States v. Leon*, 468 U.S. 897, 919, 104 S. Ct. 3405, 82 L. Ed 2d 677 (1984), the State argues that the exclusionary rule should not be applied to deter objectively reasonable law enforcement activity. The State argues that if the Prairie Village officers violated K.S.A. 2012 Supp. 22-2401a, the violation was not triggered by an intent to subvert Kansas law and, thus, the evidence should not be suppressed.

Vrabel asserts that suppression of the evidence is the proper remedy for a violation of K.S.A. 2012 Supp. 22-2401a. He points out that the remedy of suppression was granted in *Sodders*, where Overland Park police detectives executed a search warrant in the city of Lenexa in violation of the statute. See 255 Kan. at 84-85. Although Vrabel acknowledges that the court's specific ruling in *Sodders* was negated by the 1994 legislative amendment to K.S.A. 2012 Supp. 22-2401a, he argues that the amendment "did not disturb the Court's endorsement of suppression as a remedy" for the statutory violation.

The exclusionary rule is a judicially created remedy, designed to deter the government from engaging in unconstitutional conduct. See *In re Tax Appeal of Burch*, 296 Kan. 713, 721, 294 P.3d 1155 (2013). The premise of the rule is straightforward: If law enforcement officers know they cannot benefit from their violations of the Constitution, then they will not commit those violations. The rule serves to deter or prevent unconstitutional conduct by law enforcement officers by giving notice to officers that any useful evidence they might obtain will be barred in a later criminal prosecution. See *State v. Moralez*, 44 Kan. App. 2d 1078, 1122, 242 P.3d 223 (2010) (Atcheson, J., dissenting), *rev. granted on other grounds* 292 Kan. 968 (2011).

K.S.A. 2012 Supp. 22-2401a does not set forth a remedy for a violation of the statute. Although not cited by either party, an instructive case is *United States v. Green*, 178 F.3d 1099 (10th Cir. 1999). In *Green*, on two separate occasions, officers of the Wichita Police Department (WPD) organized a "controlled buy" of narcotics at the defendant's residence outside the officers' jurisdiction

in Butler County. After each controlled buy, the WPD officers obtained a search warrant and searched the defendant's residence with the assistance of Butler County detectives. The WPD officers seized drug evidence from the residence. The defendant filed a motion to suppress the evidence on the ground that the WPD officers acted outside their jurisdiction. The district court denied the motion to suppress, and the defendant was convicted of two counts of possession of methamphetamine with intent to distribute and one count of possession of cocaine with intent to distribute.

On appeal, the government did not contest the fact that the WPD officers acted outside their jurisdiction in violation of 22-2401a(2). Nevertheless, the court determined that the evidence seized from the defendant's residence should not be suppressed, stating that " ' "the exclusionary rule is only concerned with deterring [federal] Constitutional violations." ' [Citation omitted.] Thus, 'the fact that the arrest, search, or seizure may have violated state law is irrelevant as long as the standards developed under the Federal Constitution were not offended.' " 178 F.3d at 1105. The court concluded that the Fourth Amendment was satisfied where the officers obtained a warrant grounded in probable cause and suppression of the evidence was not required, even though the WPD officers acted outside their jurisdiction in violation of Kansas law. 178 F.3d at 1106.

Generally, the exclusionary rule will be applied to suppress evidence only when the defendant's constitutional rights have been violated by a government agent. Numerous federal cases hold that evidence seized by officers acting outside their jurisdictions in violation of state law but in conformity with the Fourth Amendment should not be subject to the exclusionary rule for that reason alone. See, *e.g.*, *United States v. Gonzales*, 535 F.3d 1174, 1181-83 (10th Cir. 2008) (extra-jurisdictional traffic stop did not constitute Fourth Amendment violation despite fact that stop violated state law); *United States v. Sawyer*, 441 F.3d 890, 898-99 (10th Cir. 2006) (Kansas officers acting outside their jurisdiction did not render voluntary consent to search invalid); *United States v. Mikulski*, 317 F.3d 1228, 1233 (10th Cir. 2003) (warrantless arrest outside

officer's jurisdiction did not rise to constitutional violation even though arrest violated state law).

But Kansas law is unclear on whether the exclusionary rule should be applied to suppress evidence obtained by law enforcement officers in violation of K.S.A. 2012 Supp. 22-2401a. As Vrabel points out, in *Sodders* the Kansas Supreme Court affirmed the district court's decision to suppress evidence seized by two Overland Park detectives who searched the defendant's apartment outside their jurisdiction in Lenexa in violation of 22-2401a. 255 Kan. at 84-85. There was nothing unconstitutional about the search, and in fact, it was conducted with a warrant. The search was unlawful only because it violated the statute. The majority opinion did not discuss the appropriate remedy for the violation of the statute. However, Justice Abbott dissented on multiple grounds, one of which was that the exclusionary rule should not be applied to suppress evidence when the defendant's constitutional rights were not violated. 255 Kan. at 95 (Abbott, J., dissenting).

*Sodders* does not control here because the majority opinion never addresses the exclusionary rule as an appropriate remedy. The Kansas Supreme Court has consistently recognized that the exclusionary rule is designed to deter the government from engaging in *unconstitutional* conduct. See *Burch*, 296 Kan. at 720. Here, the Prairie Village officers violated K.S.A. 2012 Supp. 22-2401a when they conducted a controlled drug buy in the city of Leawood without an appropriate request for assistance from Leawood officers. But the Kansas Legislature is free to impose any restrictions on a law enforcement officer's geographical authority it deems appropriate, or to impose no such restrictions at all, without infringing on anyone's constitutional rights. The legislature certainly could amend 22-2401a to permit officers from one city to exercise their powers in another city as long as prior notice is given and permission is obtained, which is what the Prairie Village officers did here. Based on the testimony in district court, this already appears to be the common practice of law enforcement agencies in Johnson County.

Vrabel makes no claim that the Prairie Village police officers violated either his federal or his state constitutional rights. Under

these circumstances, suppression of the evidence is not the appropriate remedy for the statutory violation. For this reason, I agree with the majority that the district court erred by granting Vrabel's motion to suppress the evidence. If this case is further reviewed, the Kansas Supreme Court would well serve the law enforcement community, the bench, and the bar by clarifying whether police conduct of the sort here conforms to K.S.A. 2012 Supp. 22-2401a and, if not, whether the appropriate remedy requires exclusion of the evidence or some other relief.