IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 108,930

STATE OF KANSAS,
*Appellant*,

v.

CARL VRABEL,
*Appellee.*

SYLLABUS BY THE COURT

1.

K.S.A. 2014 Supp. 22-2401a describes the territory in which law enforcement officers employed by a city may exercise their powers as law enforcement officers.

2.

Generally, city law enforcement officers may exercise their police powers within the city limits of the city that employs them; in any other place when a request for assistance has been made by law enforcement officers from that other place; or when in fresh pursuit of a person.

3.

The legislature has granted additional extraterritorial jurisdiction to city law enforcement officers in Sedgwick and Johnson counties when executing a valid arrest warrant or search warrant within the respective county. The legislature has granted additional extraterritorial jurisdiction to city law enforcement officers in Johnson County, allowing city officers to exercise their powers as law enforcement officers in any adjoining city within Johnson County when any crime, including a traffic infraction, has been or is being committed by a person in view of the law enforcement officer.

1

4.

The statutory territorial constraints on city law enforcement officers apply to the exercise of all of their powers as law enforcement officers; K.S.A. 2014 Supp. 22-2401a does not apply solely to searches and seizures. When a city law enforcement officer arranges and provides the money for a controlled drug buy through a confidential informant, that officer has exercised his or her powers as a law enforcement officer within the meaning of the jurisdictional constraints of K.S.A. 2014 Supp. 22-2401a.

5.

To exercise their powers as law enforcement officers in a place outside the boundaries of their own city pursuant to the "request for assistance" exception under K.S.A. 2014 Supp. 22-2401a(2)(b), the city officers must have received a request for assistance from the law enforcement officers of the other place. Mere acquiescence or acceptance of assistance by the officers of the invaded jurisdiction after notification by the invading officers does not constitute a request for assistance under K.S.A. 2014 Supp. 22-2401a(2)(b).

6.

The Johnson County bordering municipalities exception set forth in K.S.A. 2014 Supp. 22-2401a(7) applies when a crime has been or is being committed in view of the intruding officer, but it does not apply when the intruding officer anticipates a future viewing of a crime for which the officer has arranged, such as a controlled drug buy.

7.

The legislative purpose for imposing territorial jurisdiction limitations on the exercise of police powers by city law enforcement officers is to maintain and protect the local autonomy of neighboring cities and counties, allowing each governmental unit to

control the exercise of police powers within its respective jurisdiction. K.S.A. 2014 Supp. 22-2401a was not intended to create additional individual rights for criminal defendants.

8.

The suppression of evidence is not the appropriate remedy where city law enforcement officers have exercised their police powers to arrange and fund a controlled drug buy in another jurisdiction in violation of the jurisdictional constraints of K.S.A. 2014 Supp. 22-2401a(2) and where the aggrieved person has made no illegal search or seizure claim and has not alleged a willful and recurrent violation of the law by the city law enforcement officers involved in the drug buy.

Review of the judgment of the Court of Appeals in 49 Kan. App. 2d 61, 305 P.3d 35 (2013). Appeal from Johnson District Court; STEPHEN R. TATUM, judge. Opinion filed April 24, 2015. Judgment of the Court of Appeals reversing the district court is affirmed. Judgment of the district court is reversed, and the case is remanded.

*Shawn E. Minihan*, assistant district attorney, argued the cause, and *Stephen M. Howe*, district attorney, and *Derek Schmidt*, attorney general, were with him on the brief for appellant.

*Jonathan A. Bortnick*, of Bortnick, McKeon, Sakoulas & Schanker, P.C., of Kansas City, Missouri, argued the cause and was on the brief for appellee.

*Daniel E. Monnat*, of Monnat & Spurrier, Chtd., of Wichita, was on the brief for *amicus curiae* Kansas Association of Criminal Defense Lawyers.

The opinion of the court was delivered by

JOHNSON, J.: Law enforcement officers employed by the City of Prairie Village set up a controlled drug buy from Carl Vrabel to occur in the neighboring Johnson County city of Leawood. As a result of the controlled buy, the district attorney filed

felony drug charges against Vrabel. But the district court suppressed evidence of the drugs and the conversation between the confidential informant (CI) and Vrabel during the controlled buy because the Prairie Village officers had obtained that evidence while exercising their police powers outside of their jurisdiction as authorized under K.S.A. 2014 Supp. 22-2401a(2). The Court of Appeals reversed, finding an implied agreement between the two cities that constituted a request for assistance by Leawood to Prairie Village. Vrabel seeks review of that reversal. Also, the State seeks our review of K.S.A. 2014 Supp. 22-2401a's applicability to the facts of this case and of the question of whether excluding evidence was an appropriate remedy for a jurisdictional violation under K.S.A. 2014 Supp. 22-2401a. We affirm the result reached by the Court of Appeals; we reverse the district court and remand for further proceedings.

FACTUAL AND PROCEDURAL BACKGROUND

On July 26, 2011, a CI advised Corporal Ivan Washington of the Prairie Village Police Department (PVPD) that Carl Vrabel had hashish—a form of marijuana—for sale. At Washington's request, the CI arranged to buy drugs from Vrabel the following day at a location specified by Washington, which was a grocery store parking lot at 95th and Mission in Leawood. Washington would explain that PVPD frequently used the Leawood location for drug buys and that it was located on a main thoroughfare to Missouri, where Vrabel lived.

The next day, prior to the buy, the CI met with Washington and other officers in Prairie Village. The officers placed a recording device on the CI and provided her with money to purchase drugs from Vrabel. The PVPD officers then followed the CI to the controlled buy location in Leawood. Shortly thereafter, Vrabel arrived, parked his vehicle, and entered the CI's vehicle. The CI gave Vrabel money in exchange for hashish. Once the transaction concluded, Vrabel returned to his vehicle and left the area. The

4

PVPD officers did not follow Vrabel or attempt to contact him on the day of the controlled buy. When the CI left the parking lot, she met the PVPD officers and gave them the purchased hashish.

In October 2011, the PVPD contacted Vrabel in Missouri. At the PVPD's request, Vrabel voluntarily followed the officers back to Prairie Village. After learning that Vrabel "didn't want to cooperate," the PVPD sent the matter to the district attorney's office. On March 9, 2012, the State charged Vrabel with distribution of marijuana and use of a communication facility to sell a controlled substance. On March 20, 2012, nearly 8 months after the drug buy, the Johnson County District Court issued a warrant for Vrabel's arrest. Vrabel voluntarily surrendered on March 26, 2012.

Vrabel filed a motion to suppress the hashish, the audio recording of the controlled buy, and surveillance photos of the scene, arguing that the PVPD "had no jurisdiction to set up and investigate a crime in the City of Leawood, Kansas." At evidentiary hearings on the motion to suppress, the State put on testimonial evidence from Washington and Captain Kevin Cauley of the Leawood Police Department (LPD) to support its position that the PVPD had jurisdiction to conduct the controlled buy in Leawood. Washington explained that his normal protocol when the PVPD conducts an investigation in Leawood is to contact Cauley and notify him of the investigation, allowing Cauley to determine if the LPD wants to assist.

On this particular occasion, Washington explained that LPD officers were not present at the buy location and did not provide assistance to Washington. Rather, Washington called Cauley and notified him that the PVPD was coming to Leawood for a narcotics investigation. Washington called Cauley again when the PVPD officers were on their way to Leawood to conduct the investigation. After the buy was completed,

Washington attempted to call Cauley twice to inform him that the buy was successful and the officers were leaving.

Cauley confirmed that his phone records reflected three phone calls from Washington on the day of the controlled buy but explained that he did not remember the content of the conversations. He explained that he believed the LPD stayed out of the area but was not 100 percent certain.

The district court granted Vrabel's motion to suppress because the court found that the PVPD "obtained the challenged evidence through an investigation and controlled drug transaction that occurred in Leawood, Kansas, [and,] therefore, they exercised their powers as law enforcement officers outside of their jurisdiction pursuant to K.S.A. [2014 Supp.] 22-2401a(2)."

The State filed an interlocutory appeal of the district court's decision to suppress evidence to the Court of Appeals. The Court of Appeals majority found that the PVPD had jurisdiction in Leawood based on a provision in K.S.A. 2014 Supp. 22-2401a(2)(b) allowing municipal officers to exceed their jurisdictional boundaries when another jurisdiction requests assistance. *State v. Vrabel*, 49 Kan. App. 2d 61, 68-69, 305 P.3d 35 (2013). One concurring member of the panel disagreed with the majority's holding that the statutory request for assistance provision applied to this case but opined that suppression of the evidence was not the appropriate remedy for the statutory violation "because Vrabel's constitutional rights were not violated by the police officers' conduct." 49 Kan. App. 2d at 69 (Malone, C.J., concurring). Vrabel timely petitioned this court for review. This court also granted the State's cross-petition for review and the Kansas Association of Criminal Defense Lawyers' motion to file an *amicus* brief.

6

We begin with an analysis of K.S.A. 2014 Supp. 22-2401a's jurisdictional limitations and specific grants of extraterritorial authority, to ultimately determine that PVPD exceeded its statutory jurisdictional authority when it arranged for a controlled drug buy in Leawood. But then we determine that, under the facts of this case, suppression of the drugs, audio recording, and surveillance photographs was not the appropriate remedy for PVPD's statutory violation.

EXTRATERRITORIAL JURISDICTION TO CONDUCT CONTROLLED DRUG BUYS

K.S.A. 2014 Supp. 22-2401a contains the provisions which govern the territory in which a city-employed law enforcement officer may exercise his or her police powers. The relevant portions of that statute state:

"(2) Law enforcement officers employed by any city may exercise their powers as law enforcement officers:

(a) Anywhere within the city limits of the city employing them and outside of such city when on property owned or under the control of such city; and

(b) in any other place when a request for assistance has been made by law enforcement officers from that place or when in fresh pursuit of a person.

. . . .

"(5) In addition to the areas where law enforcement officers may exercise their powers pursuant to subsection (2), law enforcement officers of any jurisdiction within Johnson or Sedgwick county may exercise their powers as law enforcement officers in any area within the respective county when executing a valid arrest warrant or search warrant, to the extent necessary to execute such warrants.

. . . .

"(7) In addition to the areas where law enforcement officers may exercise their powers pursuant to subsection (2), law enforcement officers of any jurisdiction within Johnson county may exercise their powers as law enforcement officers in any adjoining city within Johnson county when any crime, including a traffic infraction, has been or is being committed by a person in view of the law enforcement officer. A law enforcement

7

officer shall be considered to be exercising such officer's powers pursuant to subsection (2), when such officer is responding to the scene of a crime, even if such officer exits the city limits of the city employing the officer and further reenters the city limits of the city employing the officer to respond to such scene." K.S.A. 2014 Supp. 22-2401a.

*Standard of Review*

The interpretation, construction, and application of a statute are questions of law subject to unlimited review. See *State v. Dale*, 293 Kan. 660, 662, 267 P.3d 743 (2011).

*Analysis*

No one disputes that the PVPD officers involved in the controlled buy were municipally employed law enforcement officers within the meaning of K.S.A. 2014 Supp. 22-2401a(2). See also K.S.A. 22-2202(13) (defining law enforcement officer). But the plain statutory language only constrains the exercise of the officers' "powers as law enforcement officers." K.S.A. 2014 Supp. 22-2401a(2). And in *State v. Miller*, 257 Kan. 844, Syl. ¶ 1, 896 P.2d 1069 (1995), the court opined that "[a]n officer who makes an arrest without a warrant outside the territorial limits of his or her jurisdiction must be treated as a private person." *Miller* opined that a law enforcement officer who is acting outside the scope of his or her powers under K.S.A. 2014 Supp. 22-2401a does not meet K.S.A. 22-2202(13)'s definition of a law enforcement officer, and, therefore, the officer is eligible to make a citizen's arrest pursuant to K.S.A. 22-2403. 257 Kan. at 851.

But here, the district court specifically found that the PVPD officers had "exercised their powers as law enforcement officers" in Leawood. We agree. There was no citizen's arrest made when the drugs were bought and evidence was obtained. In fact, Vrabel was not arrested until he turned himself in to authorities 8 months after the Leawood transaction. The PVPD officers were investigating whether Vrabel was

committing drug offenses, and they endeavored to trap Vrabel selling drugs. To set the trap, PVPD officers facilitated a CI's purchase of an illegal drug from Vrabel outside the boundaries of their city. If the officers were acting as private citizens, *i.e.*, were not exercising their police powers, then they were aiding and abetting the commission of a drug felony in Leawood. Off-duty city officers acting as private citizens cannot lawfully buy drugs through an intermediary in neighboring cities. Moreover, the intermediary (CI) would not be an agent of law enforcement, so that she could not lawfully possess the hashish to carry it from Vrabel to the off-duty officers. In short, *Miller*'s tack of treating the law enforcement officers as private citizens cannot be used to validate an extraterritorial controlled drug buy that was not an authorized exercise of police power under K.S.A. 2014 Supp. 22-2401a.

The State argues that K.S.A. 2014 Supp. 22-2401a has no application in this case because that statute "is clearly limited to searches and seizures." But the clarity of such a limitation is not revealed by a plain reading of the statutory language. See *State v. Phillips*, 299 Kan. 479, 495, 325 P.3d 1095 (2014) (appellate court first attempts to ascertain legislative intent through statutory language enacted, giving common words their ordinary meanings); see also *State v. Sodders*, 255 Kan. 79, 84, 872 P.2d 736 (1994) (declaring K.S.A. 22-2401a to be "clear"). The statute's plain language speaks to the city police exercising "powers as law enforcement officers." Those powers would have to include the authority to do all that is necessary to permit the city officer to meet his or her common-law duty to the public to preserve the peace. *Cf. Woodruff v. City of Ottawa*, 263 Kan. 557, 563, 951 P.2d 953 (1997) (under common law, police duty to preserve the peace is owed to the public, not an individual). In turn, preserving the peace would logically include the activities in which the PVPD officers engaged in this case— arranging a controlled buy to attempt to remove drug dealers from the streets—even though they may stop short of seizing or searching the drug dealer. Moreover, as pointed out in the Court of Appeals concurrence, at least one other jurisdiction has treated an

9

officer's organizing and conducting a controlled drug buy as the exercise of police powers subject to territorial jurisdiction limits. See *State v. Stuart*, 855 P.2d 1070, 1074 (Okla. Crim. 1993) (invalidating search warrant obtained pursuant to controlled drug buy arranged by city police to occur outside city limits; officer acting outside jurisdiction is acting outside scope of authority).

In essence, the State's argument suggests that the legislature intended for city officers to be able to exercise their police powers, other than searches and seizures, anywhere they want. We discern no support for that proposition. To the contrary, we observe that the legislature proved that it knows how to grant such wide-ranging jurisdiction when it enacted K.S.A. 74-2108, stating that the Kansas Highway Patrol is "vested with the power and authority of peace, police and law enforcement officers *anywhere within this state irrespective of county lines*." (Emphasis added.)

Nor are we moved by the State's warning that our failure to rewrite the statute to limit its applicability to searches and seizures will "cripple law enforcement agencies." As the *amicus* brief pointed out, the topic of the territorial limitation of city police jurisdiction is subject to competing public policies, best resolved by the legislature, as described in that brief's citation to Texas law:

> "It may be argued that there is always a serious shortage of peace officers and that the shortage can be partially alleviated by abolishing territorial limitations on their power and by granting them countywide or statewide warrantless arrest authority. On the other hand, it may be argued that the common-law rule is needed in order to preserve local civilian control of peace officers, who should not be allowed to operate in cities or counties whose elected leaders have no control over their selection, training, discipline, supervision, and performance. These are difficult issues which are, and should be, controversial, but they are for the legislature to decide, not us. The legislature may, by simple majority vote, grant broad statewide warrantless arrest powers to all peace

10

officers, thus abrogating both the common-law rule keeping city police in their cities and the limitations of Chapter 14 on warrantless arrests." *Love v. State*, 687 S.W. 2d 469, 478 (Tex. App. 1985), *superseded by statute as stated in Britt v. State*, 768 S.W. 2d 514 (Tex. App. 1989).

Although the Court of Appeals majority found that K.S.A. 2014 Supp. 22-2401a applied to the activities in which the PVPD officers were engaged, it opined that those activities fit within the "request for assistance" exception in subsection (2)(b). To manufacture an implied request for assistance from the Leawood Police Department (LPD), the majority relied upon its perception that there was "at least an implied agreement for drug-buy assistance between the PVPD and LPD." 49 Kan. App. 2d at 68. For authority, the majority looked to three cases: (1) *State v. Ross*, 247 Kan. 191, 194, 795 P.2d 937 (1990), which held that a request for assistance can exist regardless of whether the requesting department actually needed assistance or could have handled the matter without assistance; (2) *State v. Rowe*, 18 Kan. App. 2d 572, 573-74, 856 P.2d 1340, *rev. denied* 253 Kan. 863 (1993), which held that acquiescence or acceptance of assistance is insufficient to establish a request for assistance but that a request for assistance may come from a long-standing oral agreement between a sheriff's department and a city police department permitting the city officers to "assist in emergency situations near the county line for the purpose[] of the holding the situation stable until [sheriff's officers] can arrive"; and (3) *State v. Davidson*, No. 98,862, 2008 WL 4291617, at *2 (Kan. App. 2008) (unpublished opinion), which upheld a county officer's request for a city officer to effect a traffic stop of an erratic driver outside the city limits, even though the city officer had initiated the call to report a "potentially dangerous situation."

The *Vrabel* majority then looked at the testimony of PVPD and LPD officers describing the normal protocol that area departments followed when conducting a controlled drug buy in a neighboring city. Essentially, the officers testified that if PVPD

11

wanted to set up a controlled buy in Leawood, the PVPD officers would notify LPD of their plans and then LPD may, or may not, provide assistance to the PVPD officers. From its review of the holdings in *Ross*, *Rowe*, and *Davidson*, the *Vrabel* majority apparently gleaned that the cities' normal protocol with respect to controlled drug buys was tantamount to an oral agreement of mutual assistance which would satisfy the "request for assistance" exception under K.S.A. 2014 Supp. 22-2401a(2)(b). 49 Kan. App. 2d at 68.

The *Vrabel* concurring opinion took issue with the majority's characterization of the arrangement between PVPD and LPD as constituting a subsection (2)(b) request for assistance because "law enforcement officers from Leawood *never* requested assistance from the Prairie Village police officers." (Emphasis added.) 49 Kan. App. 2d at 72 (Malone, C.J., concurring). We agree. Rather, the testimony simply established that if PVPD decided on its own to arrange for a controlled drug buy in Leawood, it would notify the contact person with the LPD of its plans. Sometimes, LPD would assist the PVPD officers, but subsection (2)(b) requires the request for assistance to be made by the law enforcement officers from the place where the drug buy is being conducted, *i.e.*, LPD had to request PVPD's assistance. Moreover, LPD's failure to object did not transform PVPD's notification into a request for assistance from LPD. As the majority acknowledged, *Rowe* clarified that "acquiescence or acceptance of assistance" by the invaded jurisdiction does not constitute a request for assistance from the foreign officers. 49 Kan. App. 2d at 66.

The concurrence also pointed out that *Rowe* and *Davidson*, relied upon by the majority, were distinguishable. The long-standing oral agreement between departments in *Rowe* dealt only with making the initial contact for emergency calls. 49 Kan. App. 2d at 73 (Malone, C.J., concurring). Here, PVPD's controlled drug buy was not an emergency and LPD never did respond or participate. In *Davidson*, as well as in *Ross*, there were

12

*explicit* requests for assistance made by the law enforcement officers in the jurisdictions in which the city officers exercised their police powers. Consequently, the concurrence opined that with respect to the "request for assistance" exception, the *Sodders* case more closely resembled Vrabel's circumstances. 49 Kan. App. 2d at 74-75 (Malone, C.J., concurring).

In *Sodders*, two detectives of the Overland Park Police Department (OPPD) asked the Lenexa Police Department for assistance in executing a search warrant in Lenexa and three Lenexa officers provided security while the OPPD detectives conducted the search. This court held that the mere presence of the Lenexa officers, even at the request of OPPD, did not meet the request for assistance requirements of K.S.A. 22-2401a. 255 Kan. at 84. The legislature reacted by amending the statute to allow law enforcement officers of any jurisdiction within Johnson County or Sedgwick County to exercise their powers as law enforcement officers in any area within the respective county when executing a search warrant. See *State v. Mendez*, 275 Kan. 412, 418, 66 P.3d 811 (2003) (discussing L. 1994 ch. 286, sec. 1). But the legislature did not change the request for assistance provision or alter *Sodders*' interpretation of that provision.

In short, we hold that when PVPD officers set up and conducted a controlled drug buy in Leawood, simply notifying LPD of their plans, they were not operating under the request for assistance exception to the territorial limitations of K.S.A. 2014 Supp. 22-2401a.

The State also urges us to apply the Johnson County bordering municipalities exception set forth in K.S.A. 2014 Supp. 22-2401a(7). That exception allows law enforcement officers from any jurisdiction in Johnson County to exercise their police powers "in any adjoining city within Johnson county when any crime . . . has been or is being committed by a person in view of the law enforcement officer." Although clever,

that argument is unpersuasive. Before Vrabel committed the distribution of marijuana in front of the PVPD officers, they had already exercised police powers in Leawood by setting the stage for the crime to occur and sending a CI into Leawood's jurisdiction with funds to purchase the drug. The subsection (7) exception applies when the crime *has been* or *is being* committed in view of the intruding officer, not when the officer anticipates a future viewing of the crime for which the officer has arranged.

Finally, after oral argument, the State filed a letter of additional authority pursuant to Supreme Court Rule 6.09(b) (2014 Kan. Ct. R. Annot. 52), citing a recent United States Supreme Court opinion, *Heien v. North Carolina*, 574 U.S. ___, 135 S. Ct. 530, 190 L. Ed. 2d 475 (2014). In *Heien*, the Court held that an officer's mistake of law can be objectively reasonable. 133 S. Ct. at 540.

The State's 6.09(b) letter does not "contain a reference either to the page(s) of the brief intended to be supplemented or to a point argued orally to which the citation pertains" as required by 6.09(b)(1)(D). 2014 Kan. Ct. R. Annot. at 53. Presumably, the State is arguing that the PVPD made an objectively reasonable mistake of law in interpreting K.S.A. 2014 Supp. 22-2401a. But the State's brief did not argue that the PVPD made a reasonable mistake of law. *Cf. State v. Littlejohn*, 298 Kan. 632, 659, 316 P.3d 136 (2014) (refusing to consider argument not specifically raised in defendant's brief). Further, the State's 6.09(b) letter makes no effort to establish the PVPD's mistake of law and articulate why such a mistake was reasonable. We therefore decline to analyze this new argument, proffered for the first time in a 6.09(b) letter.

The bottom line is that the district court was correct in finding that the PVPD officers lacked jurisdiction to conduct the controlled drug buy in Leawood because the officers were acting outside the boundaries of the city that employed them and their

14

actions did not fall within one of the statutory exceptions allowing city officers to exercise their police powers outside of their own jurisdiction.

## EXCLUSION OF EVIDENCE FOR A STATUTORY VIOLATION

The State cross-petitioned for review, based in part on the Court of Appeals concurrence, which opined that the suppression of evidence was not an appropriate remedy or sanction where Vrabel did not claim that PVPD's noncompliance with K.S.A. 2014 Supp. 22-2401a constituted a violation of his federal or state constitutional rights. The State argues on review that this case did not involve a search or seizure, and, therefore, the Fourth Amendment exclusionary rule does not apply. Moreover, based upon its allegation that the statutory violation was of a technical nature and that the police officers were acting in good faith under the normal protocol for the region, the State contends that Vrabel simply has no remedy in this case.

First, we address the concurrence in the Court of Appeals' published opinion which relied heavily upon federal cases considering the Fourth Amendment to the federal Constitution. The principal case discussed was *United States v. Green*, 178 F.3d 1099 (10th Cir. 1999), which involved a defendant's motion to suppress evidence obtained in a residential search that was conducted pursuant to a search warrant by officers who were outside their jurisdiction. The concurrence cited *Green* for the proposition that "'"the fact that the arrest, search, or seizure may have violated state law is irrelevant as long as the standards developed under the Federal Constitution were not offended."' 178 F.3d at 1105." 49 Kan. App. 2d at 78. From the federal cases, the concurrence extrapolates a bright-line rule that the exclusionary rule can only be invoked to remedy a federal constitutional violation.

15

Contrary to that bright-line rule, the Kansas Supreme Court, in *Sodders*, affirmed the suppression of evidence based upon a K.S.A. 2014 Supp. 22-2401a violation, without finding a concurrent federal constitutional infringement. The concurrence acknowledged this precedent, describing *Sodders* as follows:

"As Vrabel points out, in *Sodders* the Kansas Supreme Court affirmed the district court's decision to suppress evidence seized by two Overland Park detectives who searched the defendant's apartment outside their jurisdiction in Lenexa in violation of 22-2401a. 255 Kan. at 84-85. There was nothing unconstitutional about the search, and in fact, it was conducted with a warrant. The search was unlawful only because it violated the statute. The majority opinion did not discuss the appropriate remedy for the violation of the statute. However, Justice Abbott dissented on multiple grounds, one of which was that the exclusionary rule should not be applied to suppress evidence when the defendant's constitutional rights were not violated. 255 Kan. at 95 (Abbott, J., dissenting)." *State v. Vrabel*, 49 Kan. App. 2d 61, 79, 305 P.3d 35 (2013) (Malone, C.J., concurring).

Curiously, after conceding the existence of that mandatory authority, the *Vrabel* concurrence declared that it was not required to follow the *Sodders* decision because the majority opinion in that case had not adequately explained why it was rejecting one of Justice Abbott's multiple reasons for dissenting, *i.e.*, the exclusionary rule is inapplicable where a defendant's constitutional rights are not violated. The Kansas Court of Appeals is duty bound to follow the precedent of the Kansas Supreme Court. See, *e.g.*, *State v. Ottinger*, 46 Kan. App. 2d 647, 655, 264 P.3d 1027 (2011), *rev. denied* 294 Kan. 946 (2012). That duty is not conditioned upon the lower court's satisfaction with the stated rationale in the Supreme Court's majority opinion, nor is it suspended when the lower court prefers the reasoning of a dissent. If the Supreme Court's holding needs to be refined, modified, or overturned, it is the province of the Supreme Court to effect that change, and until that happens, the Court of Appeals is duty bound to follow the existing precedent.

Nevertheless, we discern that *Sodders* is not applicable here for another reason; it is factually distinguishable. As the Court of Appeals concurrence described, *Sodders* involved a search and seizure; the officers of one city executed a search warrant on the defendant's apartment located in another city and seized the defendant's property, which evidence the defendant then moved to suppress. That motion to suppress illegally seized property would have been governed by K.S.A. 22-3216, which says in subsection (1): "Prior to the trial a defendant aggrieved by an unlawful search and seizure may move for the return of property and to suppress as evidence anything so obtained." Pointedly, the statutory right to suppress evidence is not restricted to those defendants who were aggrieved by an *unconstitutional* search and seizure. Instead, the statute applies to an *unlawful* search and seizure, and, as the *amicus* brief points out, the word "unlawful" is often used in the context of a violation of state law.

But we need not decide today whether the search or seizure exclusionary rule should apply to evidence obtained via a warrant search by officers who were not jurisdictionally authorized to execute the warrant at the site of the search. Those are not the facts presented in this case. As the State asserts in its petition for review, this is quite simply not a search and seizure case and neither the exclusionary rule nor the provisions of K.S.A. 22-3216 apply here. The evidence Vrabel sought to suppress was obtained during a voluntary encounter with the CI, during which Vrabel freely and voluntarily produced and handed the hashish to the CI, before driving away unabated. Nobody or nothing was searched; nobody or nothing was seized.

Granted, the State indirectly enticed the defendant to relinquish possession of the drugs by helping the CI stage the controlled buy and by supplying the money to purchase the drug. But no one has explained how that exercise of police power can be characterized as a search or seizure, within the purview of the Fourth Amendment to the

17

United States Constitution or § 15 of the Kansas Constitution Bill of Rights. Recently, we explained:

> "The Fourth Amendment to the United States Constitution prohibits unreasonable searches and seizures. Warrantless searches are presumed to be unreasonable. See *State v. Daniel*, 291 Kan. 490, 496, 242 P.3d 1186 (2010), *cert. denied* 563 U.S. ___ (2011); see also *Arizona v. Gant*, 556 U.S. 332, 338, 129 S. Ct. 1710, 173 L. Ed. 2d 485 (2009). The Fourth Amendment is not implicated, however, unless the person invoking its protection had a '"justifiable,"' '"reasonable,"' or '"legitimate expectation of privacy"' that was invaded by government action. *Smith v. Maryland*, 442 U.S. 735, 740, 99 S. Ct. 2577, 61 L. Ed. 2d 220 (1979); see also *Illinois v. Caballes*, 543 U.S. 405, 408, 125 S. Ct. 834, 160 L. Ed. 2d 842 (2005) ('Official conduct that does not "compromise any legitimate interest in privacy" is not a search subject to the Fourth Amendment. [Citation omitted.]')." *State v. Burnett*, 300 Kan. 419, 441, 329 P.3d 1169 (2014).

Accordingly, the remedy or sanction for the officers' extra-jurisdictional exercise of police power in arranging and funding a controlled drug buy outside their own city is not governed by the exclusionary rule applicable to the federal and state constitutional provisions prohibiting unreasonable searches or seizures. Likewise, it is not covered by the statutory provision in K.S.A. 22-3216 for suppressing illegally seized evidence. Moreover, K.S.A. 2014 Supp. 22-2401a does not tell us what is to happen when a law enforcement officer exceeds his or her geographical limitations and, more specifically, that statute does not provide for excluding evidence as a remedy for jurisdictional violations. In contrast, Texas provides a blanket exclusionary remedy that encompasses statutory violations. Tex. Crim. Proc. Code Ann. art. 38.23 (West 2005) ("No evidence obtained by an officer or other person in violation of any provisions of the Constitution or laws of the State of Texas, or of the Constitution or laws of the United States of America, shall be admitted in evidence against the accused on the trial of any criminal case.").

18

The *amicus* points us to *United States v. Giordano*, 416 U.S. 505, 524-29, 94 S. Ct. 1820, 40 L. Ed. 2d 341 (1974), where the United States Supreme Court held that violation of the federal wiretapping statute required suppression of evidence. But there, the wiretapping statute explicitly provided for exclusion. 416 U.S. at 524-25. Consequently, that precedent is insufficiently analogous to be persuasive.

Alternatively, the *amicus* urges us to exercise our inherent supervisory authority to suppress evidence obtained in violation of state law. It points to the stance taken by the Hawaii Supreme Court in *State v. Pattioay*, 78 Hawaii 455, 896 P.2d 911 (1995). That case involved a violation of the Posse Comitatus Act (PCA) when a controlled drug buy conducted by the military led to a search warrant for the defendant's house. The Hawaiian court recognized the general rule that a violation of the PCA did not require the application of the exclusionary rule. But the court reasoned that

> "[t]he purpose of the exclusionary rule, as we see it, is primarily to deter illegal police conduct and secondarily to recognize that the courts of this State have the inherent supervisory power over criminal prosecutions to ensure that evidence illegally obtained by government officials or their agents is not utilized in the administration of criminal justice through the courts." 78 Hawaii at 468.

Consequently, the court refused to ignore the clear violation of the law and thereby justify and condone such illegality by using tainted evidence in the criminal courts of that state. 78 Hawaii at 469.

At first blush, Hawaii's rationale of maintaining the integrity of the judicial process by refusing to justify and condone tainted evidence is mildly seductive. But a closer look at the purpose of K.S.A. 2014 Supp. 22-2401a convinces us that exclusion is not the appropriate remedy.

19

With the enactment of 22-2401a in 1977, the legislature modified the common law. See *City of Junction City v. Riley*, 240 Kan. 614, 619, 731 P.2d 310 (1987). Legislative history reveals that before K.S.A. 2014 Supp. 22-2401a's enactment, "there [was] no law enforcement power beyond the limits of the city." Minutes of the Senate Committee on Judiciary, March 3, 1977, p. 2. Supporters of the statute noted a desire to "extend authority to officers when they are responding to a request for assistance." Minutes of the Senate Committee on Judiciary, March 3, 1977, p. 2. But the testimony also voiced serious concerns about the possibility of "giving statewide law enforcement powers" to city officers. Minutes of the Senate Committee on Judiciary, March 3, 1977, p. 2. Accordingly, the purpose of the statute originally enacted was to give law enforcement the additional leeway needed to assist one another in certain circumstances, such as when an officer was in fresh pursuit of a lawbreaker or when an officer was observing a crime being committed.

But, by not granting statewide jurisdiction to all law enforcement officers, the legislation maintained local control by cities and counties, protecting them from unwanted intrusion by neighboring law enforcement officers over whom the invaded territory would have no control. For instance, the governing body of a city may endeavor to establish stringent policies on the use of force by law enforcement officers against the citizens of that city, but it would be hard-pressed to enforce its regulations against marauding law enforcement officers from other jurisdictions. Even when the legislature reacted to *Sodders* by amending K.S.A. 2014 Supp. 22-2401a to add subsection 5, it was careful not to extend the extraterritorial jurisdiction of city officers to any cities other than those within but two counties.

In short, it is apparent that the statutory limitations on the jurisdiction of city officers was put in place to protect the local autonomy of neighboring cities and counties, rather than to create an individual right, assuring that a person could only be caught

20

breaking the law by an officer of the jurisdiction within which the crime was being committed. Such an individual right strikes one as a bit nonsensical. How was Vrabel adversely impacted by PVPD, rather than LPD, arranging and paying for the controlled drug buy? Moreover, a purpose to create an individual right to be free from apprehension by an officer from outside the jurisdiction is belied by the exceptions incorporated into K.S.A. 2014 Supp. 22-2401a, which provide for ample lawful opportunities for such an apprehension to occur.

Consequently, the suppression of any evidence obtained during a city officer's unauthorized exercise of police power outside the officer's employing city—other than a search or seizure—will generally not be required. That is especially so in circumstances such as presented in this case where the defendant has not been prejudiced in the least by the fact that PVPD arranged the drug buy, rather than LPD. Therefore, notwithstanding that the district court surely thought it was dutifully following the precedent set in *Sodders*, we must reverse its suppression of the evidence. The Court of Appeals decision is affirmed on different grounds.

But before concluding, a word of caution might be in order. Like our sister State to the West: "'[T]his court cannot sanction willful and recurrent violations of the law' and . . . future violations 'may trigger application of the [exclusionary] rule.'" *People v. Martinez*, 898 P.2d 28, 33 (Colo. 1995) (quoting *People v. Wolf*, 635 P.2d 213, 217 [Colo. 1981]).

The decision of the Court of Appeals is affirmed. The decision of the district court is reversed, and the case is remanded for further proceedings.