NOT DESIGNATED FOR PUBLICATION

No. 122,813

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

TIMOTHY HEDMAN JR.,
*Appellant*.

MEMORANDUM OPINION

Appeal from Clay District Court; JOHN F. BOSCH, judge. Opinion filed February 5, 2021.
Affirmed.

*Peter Maharry*, of Kansas Appellate Defender Office, for appellant.

*Richard E. James*, county attorney, and *Derek Schmidt*, attorney general, for appellee.

Before MALONE, P.J., HILL and BUSER, JJ.

PER CURIAM:  In this direct appeal, Timothy Hedman Jr. challenges his
convictions of felony possession of tetrahydrocannabinol (THC) and misdemeanor
possession of drug paraphernalia. Hedman claims that the State presented insufficient
evidence to support his convictions and that the district court committed clear error by
instructing the jury that the term "'drug paraphernalia' includes a vaping device." We
reject both claims and affirm the district court's judgment.

1

On June 30, 2019, Clay Center Police Chief Bill Robinson was working an investigation that led him to a house on McBrathney Street. When he arrived at the house, Hedman was sitting in the yard. Hedman identified himself and because Robinson believed there was an outstanding arrest warrant for Hedman, he asked Officer Tiffany Dahlquist to check with dispatch for warrants. The dispatcher confirmed that there was a warrant for Hedman's arrest, so Dahlquist arrested and handcuffed Hedman.

Robinson began to search Hedman's pockets incident to the arrest, and he found that "Hedman's pockets were crammed full of stuff." Robinson retrieved flashlights, a hose clamp, a pocketknife, and a bottle of fluid that Hedman identified as "vape fluid." Hedman also told Robinson that his broken vaping pen was in his pocket and he was at the house to get parts to fix his vaping pen. There were so many items in Hedman's pockets that Robinson could not hold all of them in his hands, so he and Dahlquist walked Hedman to a police car to continue the search.

Officer Scott Galindo arrived at the scene and Robinson asked Galindo to complete the search of Hedman. Galindo retrieved additional items from Hedman's pockets, including parts of a vaping device and cartridges for a vaping device. When Galindo pulled the vaping device parts from Hedman's left pocket, Hedman said that the other parts to his vaping pen were in another pocket. At no point during the encounter did Hedman say that the vaping device parts did not belong to him.

After returning to the law enforcement center, Galindo began a more thorough inventory of the items from Hedman's pockets. Galindo had been working with vaping devices for five years and had assembled and disassembled them. He believed that the parts from Hedman's pockets could be assembled into a complete vaping device. And although Galindo believed that vaping devices were more commonly used to ingest

2

nicotine than to ingest illegal drugs, Galindo noticed that the liquid in two of the cartridges recovered from Hedman was darker and thicker than the type of liquid he associated with nicotine products used for vaping. Suspecting that the liquid was not a tobacco product, Galindo field tested one of the suspicious cartridges and, when the field test showed the presence of marijuana or THC, he gave that cartridge and one other to Dahlquist to send to the Kansas Bureau of Investigation (KBI) for more testing.

Hedman was informed of his *Miranda* rights and agreed to speak with Dahlquist at the law enforcement center. When Dahlquist told Hedman that the cartridges from his pockets appeared to contain THC, Hedman said for the first time that he had just obtained those parts that day at the house where he had first encountered the police. Hedman said he did not know that the cartridges contained marijuana.

On July 23, 2019, the State charged Hedman with one count of felony possession of marijuana and one count of misdemeanor possession of drug paraphernalia. The State later amended the charges to one count of felony possession of marijuana and/or THC and one count of misdemeanor possession of drug paraphernalia.

Hedman's one-day jury trial was held on January 10, 2020. Robinson, Galindo, and Dahlquist testified for the State. KBI chemist Patrick Porubsky, who tested the cartridges, testified that the residue contained THC. The State also showed the jury excerpts from body camera footage recorded during Hedman's initial encounter with police and his later interview with Dahlquist at the law enforcement center.

Hedman testified on his own behalf. He stated that on the day of his arrest, he was working at the house with a woman named Aprille, who lived there. While working, he found various vaping pen parts scattered about, so he asked Aprille if he could buy them from her and he put them into a bag, intending to use them to fix some vaping pens he had at his mother's home. Hedman said he did not look closely at the parts as he collected

3

them because he was working. He explained that he told the officers that the parts were his because he "had just bought them" and he did not mention at first that he had just bought them because he did not think it was relevant. Hedman maintained that none of the parts the officers found on him were his before that day. After hearing all the evidence, the jury found Hedman guilty of both charges.

On March 19, 2020, the district court sentenced Hedman to a controlling sentence of 14 months' imprisonment but granted probation for 18 months. Hedman timely appealed the district court's judgment.

SUFFICIENCY OF THE EVIDENCE

Hedman first claims that the State presented insufficient evidence to support his convictions. More specifically, he contends that the State presented insufficient evidence that he knew the cartridges contained THC residue. The State disagrees.

> "'When a criminal defendant challenges the sufficiency of the evidence used to support a conviction, an appellate court looks at all the evidence "in a light most favorable to the State to determine whether a rational factfinder could have found the defendant guilty beyond a reasonable doubt." A reviewing court "generally will 'not reweigh evidence, resolve evidentiary conflicts, or make witness credibility determinations.'" [Citations omitted.]'" *State v. Gonzalez*, 311 Kan. 281, 286, 460 P.3d 348 (2020).

The State charged Hedman with felony possession of marijuana and/or THC in violation of K.S.A. 2018 Supp. 21-5706(b)(3) and (b)(7). The State charged Hedman with misdemeanor possession of drug paraphernalia in violation of K.S.A. 2018 Supp. 21-5709(b)(2). To obtain a conviction, the State needed to prove that Hedman unlawfully possessed THC and that he possessed a vaping device with the intent to use it to store or inhale THC. Hedman argues that the State failed to prove that he unlawfully "possessed"

4

THC because he had just bought the parts for the vaping pen on the day of his arrest and he did not know that the cartridges contained THC residue.

"Possession" means having joint or exclusive control over an item with knowledge of and the intent to have such control or knowingly keeping some item in a place where the person has some measure of access and right of control. K.S.A. 2020 Supp. 21-5701(q). As for controlled substances, Kansas appellate courts follow the majority view that the proof of the possession of *any* amount of a controlled substance is sufficient to sustain a conviction even though such amount may not be measurable or usable. See, e.g., *State v. Brown*, 245 Kan. 604, 613-14, 783 P.2d 1278 (1989); *State v. Lundquist*, 30 Kan. App. 2d 1148, 1151, 55 P.3d 928 (2002).

Hedman concedes that the State presented evidence that he physically possessed vaping cartridges that tested positive for THC, but he argues that the State failed to sufficiently prove that he knew the cartridges contained a controlled substance. In support, he cites *State v. Rizal*, 310 Kan. 199, 208, 445 P.3d 734 (2019), in which our Supreme Court reiterated that "to sustain a conviction for possession of a controlled substance," the State must "prove that a defendant knew about the nature of the substance possessed." Kansas courts have recognized that "[p]ossession of a controlled substance requires specific intent to exercise control over the substance, *with knowledge of the nature of the substance*." (Emphasis added.) *State v. Keel*, 302 Kan. 560, Syl. ¶ 1, 357 P.3d 251 (2015). And as the court noted in *Rizal*, "a mistake of fact about the nature of a controlled substance—meaning the actual belief that it is 'some other lawful substance that is not controlled—could negate the knowledge requirement." 310 Kan. at 209.

Hedman focuses on this language, arguing that the evidence showed he did not know the cartridges contained THC so there was insufficient evidence to support his conviction of possession of THC. He also argues that his lack of knowledge that the

cartridges contained THC "negates any finding that the State proved the required element that Hedman had the vape pen with the intent to use it as drug paraphernalia."

As Hedman points out, he testified at trial that he had just bought the cartridges that day and did not know the cartridges contained THC until Dahlquist told him at the law enforcement center. Dahlquist and Porubsky both testified that they could not tell just by looking at the cartridges whether they contained THC. Dahlquist and Galindo both testified that none of the parts or cartridges were marked in a way that revealed they contained THC or marijuana. Galindo also testified that vaping devices are more commonly used to ingest nicotine and that although he did not remember finding tobacco in Hedman's pocket, he would not dispute it if the body cameral footage showed that he did. Hedman asserts that "[t]his all points to the conclusion that Hedman did not know that there was residual THC in the vape pen."

Resolution of this issue is controlled by our standard of review. When a defendant challenges the sufficiency of the evidence to support a conviction, an appellate court looks at all the evidence in a light most favorable to the State to determine whether a rational fact-finder could have found the defendant guilty beyond a reasonable doubt. *Gonzalez*, 311 Kan. at 286. Appellate courts do not reweigh evidence, resolve evidentiary conflicts, or make witness credibility determinations. 311 Kan. at 286. And a conviction of even the gravest offense can be based entirely on circumstantial evidence and the inferences fairly deducible therefrom. *Rizal*, 310 Kan. at 209-10.

The State's evidence established that Hedman possessed in his pockets materials necessary to make a vaping pen. Galindo testified that the dark color of the liquid in the cartridges tipped him off that the vaping pen was being used for marijuana. Porubsky testified that the cartridges found on Hedman tested positive for THC residue. As the district court instructed the jury, it is unlawful to possess any amount of a controlled substance, even though such amount may not be measurable or usable.

Hedman testified that he had just bought the vaping items and did not realize that they contained THC residue. This testimony, if believed by the jury, would have supported a not guilty verdict. But apparently the jury did not believe Hedman's testimony and appellate courts do not reweigh evidence or make witness credibility determinations. And any conviction can be based entirely on circumstantial evidence. The jury could have reasonably inferred from the evidence presented by the State that Hedman knew the vaping cartridges contained THC residue and that he intended to use the vaping device to inhale THC. Viewing the evidence in a light most favorable to the State, we conclude there was sufficient circumstantial evidence to support Hedman's convictions of possession of THC and possession of drug paraphernalia.

Finally, we note that the record on appeal does not contain all the evidence that was before the jury. The jury saw body camera footage of the search and video of Dahlquist interviewing Hedman at the law enforcement center, but this video is not included in the record on appeal. When a defendant challenges the sufficiency of the evidence to support a conviction, an appellate court must review *all* the evidence in a light most favorable to the State to determine whether a rational fact-finder could have found the defendant guilty beyond a reasonable doubt. *Gonzalez*, 311 Kan. at 286. As the party claiming error, Hedman has the burden to provide a record that affirmatively shows prejudicial error. *State v. Simmons*, 307 Kan. 38, 43, 405 P.3d 1190 (2017). Because Hedman failed to provide this court with all the evidence presented to the jury that convicted him, his sufficiency of the evidence claim could fail for this reason alone. But more importantly, we find the evidence that Hedman did provide for us to review was sufficient to support his convictions based on our standard of review.

JURY INSTRUCTION ISSUE

Hedman next claims that the district court committed clear error by instructing the jury that the term "'drug paraphernalia' includes a vaping device." Hedman argues that the

7

jury instruction amounted to taking a question of fact away from the jury. The State argues that the district court did not err in instructing the jury.

The district court gave three jury instructions specific to the charge of possession of drug paraphernalia. Instruction No. 7 stated:

"The defendant is charged with unlawfully possessing drug paraphernalia with the intent to use it. He pleads not guilty.

"To establish this charge, the State must prove each of the following claims:

"1. The defendant possessed a vaping device with the intent to use it as drug paraphernalia to store, contain, inject, ingest, inhale or otherwise introduce into the human body THC.

"2. This act occurred on or about the 30th day of June, 2019, in Clay County, Kansas.

"'Possession' means having joint or exclusive control over an item with knowledge of and the intent to have such control or knowingly keeping some item in a place where the person has some measure of access and right of control.

"A defendant acts intentionally when it is the defendant's desire or conscious objective to do the act complained about by the State.

"A defendant acts knowingly when the defendant is aware of the nature of his or her conduct that the State complains about or of the circumstances in which he or she was acting."

Instruction No. 8 stated:

"In determining whether an object is drug paraphernalia, you shall consider, in addition to all other logically relevant factors, the following:

"1. The proximity of the object, in time and space, to a direct commission of a drug crime.

"2. The proximity of the object to controlled substances.

"3. The existence of any residue of controlled substances on the object.

"4. Expert testimony concerning the object's use."

8

And Instruction No. 9 stated: "'Drug paraphernalia' means all equipment, and materials of any kind which are used or primarily intended or designed for use to store, contain, inject, ingest, inhale or otherwise introducing [*sic*] into the human body a controlled substance. 'Drug paraphernalia' includes a vaping device."

Hedman argues that the district court erred by instructing the jury that "'[d]rug paraphernalia' includes a vaping device" because doing so removed from the jury the question of fact on whether the vaping device constituted drug paraphernalia. The State argues that the Kansas Supreme Court has already decided this issue in its favor, citing *Keel*, 302 Kan. at 569-70.

> "Appellate courts analyze each jury instruction claim under a three-step process: (1) whether the court can or should review the issue, that is, whether there is a lack of appellate jurisdiction or whether there was a failure to preserve the issue; (2) the merits of the claim; and (3) whether any error found was harmless. If the defendant did not make a contemporaneous objection to a jury instruction, appellate courts will review the claim of error for clear error. [Citations omitted.]" *State v. Patillo*, 311 Kan. 995, 1013, 469 P.3d 1250 (2020).

Hedman did not object at trial to the jury instruction he now challenges, so this court reviews for clear error. This court finds clear error only if "it is 'firmly convinced that the jury would have reached a different verdict had the instruction error not occurred.'" *State v. Gray*, 311 Kan. 164, 173, 459 P.3d 165 (2020). Hedman bears the burden to establish clear error and this court considers the entire record to determine whether he has met that burden. See 311 Kan. at 173.

Hedman admits that the Kansas Supreme Court has rejected the argument he now makes. In *Keel*, the Kansas Supreme Court held that, when considered in the context of the jury instructions as a whole, an instruction that stated "'[d]rug paraphernalia' shall include, but is not limited to: (1) Pipes, [and] (2) Bongs," was not clear error. 302 Kan. at

9

569-70. The district court in *Keel* also instructed the jury that the State had to prove "'[t]hat the defendant intentionally possessed drug paraphernalia to use to ingest, inhale or otherwise introduce into the human body methamphetamine and/or marijuana." 302 Kan. at 569. And it instructed the jury to consider all relevant factors to determine whether an object is drug paraphernalia. 302 Kan. at 570. The Kansas Supreme Court held that "[r]eading the instructions as a whole, they informed the jury that it had to do more than simply find that Keel was the possessor of a bong and/or pipes; it had to find that he was using or intended to use the items as paraphernalia facilitating the intake of controlled substances." 302 Kan. at 570.

The *Keel* court cited its prior holding in *State v. Sisson*, 302 Kan. 123, 351 P.3d 1235 (2015), which "addressed a nearly identical argument" and "approved similar instructions regarding scales used as drug paraphernalia." *Keel*, 302 Kan. at 570. As in *Keel*, the Kansas Supreme Court in *Sisson* noted that other jury instructions required the State to prove "'[t]hat the defendant intentionally possessed with the intent to use scales as drug paraphernalia to distribute cocaine'" and instructed the jury that it should consider "'all other logically relevant factors'" to decide "'whether an object is drug paraphernalia.'" 302 Kan. at 131. Reading the instruction as a whole, the *Sisson* court found that the instructions were not erroneous because "they informed the jury that it had to do more than simply find that Sisson was the possessor of scales; it had to find that he was using or intended to use the scale as paraphernalia for use in distributing controlled substances." 302 Kan. at 132.

*Sisson* and *Keel* control the outcome of this issue for Hedman. As in those cases, the district court here instructed the jury that the State needed to prove that Hedman "possessed a vaping device with the intent to use it as drug paraphernalia to store, contain, inject, ingest or otherwise introduce into the human body THC." It also instructed the jury to consider "all other logically relevant factors" when deciding whether an object is drug paraphernalia. As pointed out in *Sisson* and reiterated in *Keel*,

10

"[w]hen reviewing jury instructions, an appellate court considers all the instructions together as a whole and does not isolate any one instruction." *Sisson*, 302 Kan. 123, Syl. ¶ 5; *Keel*, 302 Kan. at 570 (citing *Sisson*).

Thus, under *Sisson* and *Keel*, the district court did not commit clear error by giving a jury instruction that defined "drug paraphernalia" to include a vaping device. As Hedman acknowledges, "[t]he Kansas Court of Appeals is duty bound to follow the precedent of the Kansas Supreme Court." See *State v. Vrabel*, 301 Kan. 797, 809, 347 P.3d 201 (2015). Hedman asserts that the Kansas Supreme Court should revisit the issue and reconsider its previous holdings, but "[i]f the Supreme Court's holding needs to be refined, modified, or overturned, it is the province of the Supreme Court to effect that change, and until that happens, the Court of Appeals is duty bound to follow the existing precedent." 301 Kan. at 810.

Affirmed.