No. 127,210

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

TYREKE RAHEIM SHARP,
*Appellant*.

SYLLABUS BY THE COURT

1.

The Fourth Amendment to the United States Constitution guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." Section 15 of the Kansas Constitution Bill of Rights provides similar protection from unlawful searches and seizures.

2.

A traffic stop is a seizure under the Fourth Amendment. The State bears the burden to demonstrate that a challenged search or seizure was lawful. Traffic stops typically require, at a minimum, reasonable suspicion of criminal activity. But a stop for the purpose of conducting an administrative search may provide a reason to lawfully stop a commercial motor vehicle, even without reasonable suspicion.

3.

As with statutes, a court must give effect to the intent expressed by plain and unambiguous language in an administrative regulation. Administrative regulations must follow the law to be valid, and they cannot contravene a controlling statute.

1

4.

In Kansas, only members of the Kansas Highway Patrol are authorized to stop commercial motor vehicles, without reasonable suspicion, for the sole purpose of conducting an administrative search. K.A.R. 82-4-2a (2022 Supp.) does not authorize any person or entity to stop a commercial motor vehicle without reasonable suspicion.

Appeal from Johnson District Court; TIMOTHY MCCARTHY, judge. Oral argument held September 16, 2025. Opinion filed November 14, 2025. Reversed.

*Jacob Nowak*, of Kansas Appellate Defender Office, for appellant.

*Maria C. Davies*, assistant district attorney, *Stephen M. Howe*, district attorney, and *Kris W. Kobach*, attorney general, for appellee.

Before HILL, P.J., PICKERING and BOLTON FLEMING, JJ.

BOLTON FLEMING, J.:  Tyreke Raheim Sharp was a passenger of a box truck when it was randomly stopped by a Johnson County sheriff's deputy for a commercial motor vehicle inspection. During the inspection, officers discovered an arrest warrant for Sharp and subsequently found marijuana in a bag containing Sharp's belongings. Sharp was arrested and charged with possession of marijuana. Sharp filed a motion to suppress the evidence obtained during the inspection, arguing the deputy was not authorized to stop a commercial motor vehicle for the purpose of an inspection because he was not a member of the Kansas Highway Patrol (KHP). The district court denied the motion to suppress, finding that K.A.R. 82-4-2a (2022 Supp.) allows people and entities other than the KHP to stop moving commercial motor vehicles to perform inspections. Following a bench trial on stipulated facts, the district court convicted Sharp of possession of marijuana with two prior convictions. Sharp appeals his conviction and sentence.

2

Sharp raises two issues on appeal. First, Sharp argues that the district court erred in denying Sharp's motion to suppress. Second, Sharp contends there was insufficient evidence to support his felony marijuana conviction because the State failed to prove he was represented by counsel, or waived his right to counsel, when he was convicted of the two prior misdemeanor marijuana convictions necessary to elevate his current offense to a felony.

We agree with Sharp that the district court erred in denying his motion to suppress. While there are a number of people and entities authorized under Kansas law to *inspect* commercial motor vehicles, we find that the only entity in Kansas authorized to *stop* a commercial motor vehicle for the purposes of an inspection, absent reasonable suspicion of a crime, is the KHP. As such, the deputy's stop of this commercial motor vehicle, without reasonable suspicion, was illegal, and the evidence discovered during such stop and subsequent search should have been suppressed.

Because we are reversing the district court's decision to deny Sharp's motion to suppress, we need not reach his second issue addressing sufficiency of evidence to classify his conviction as a felony.

Accordingly, we reverse the district court's decision denying Sharp's motion to suppress.

FACTUAL AND PROCEDURAL BACKGROUND

In the early morning hours of June 13, 2022, Johnson County Sheriff Deputy Rodney Johnson stopped a truck on southbound I-35 in Johnson County. The truck was a 26-foot box truck and had a Department of Transportation (DOT) number attached to it. The parties agree that the truck was a commercial motor vehicle. The driver of the truck

3

had committed no infractions; rather, the sole purpose of the stop was to conduct a random commercial motor vehicle inspection.

After the truck stopped, Deputy Johnson approached and located two individuals inside. Tyreke Sharp was a passenger. As part of the stop and inspection, Deputy Johnson conducted a records check, which revealed that Sharp had an active warrant from Leavenworth County, and that the driver was on parole out of Kansas and Missouri for possession of narcotics. Deputy Johnson requested backup.

After stopping the truck, Deputy Johnson conducted an inspection. Deputy Johnson has been a deputy for over 18 years, has received specialized training in the inspection of commercial motor vehicles, and maintains active certification. The parties agree that Deputy Johnson was a certified commercial motor vehicle inspector and that there were no issues with his inspection.

In response to Deputy Johnson's request for backup, Deputy Edward Blake arrived on the scene with his K9 drug dog. Deputy Blake assisted with taking Sharp into custody pursuant to the warrant. After taking Sharp into custody, Deputy Blake received consent from the driver to perform a free air sniff on the vehicle's exterior with the K9 drug dog. When the dog reached the front passenger floorboard, it stopped and signaled the presence of narcotics. Deputy Blake then searched the vehicle. During the search, Deputy Blake found a pillowcase with a fanny-pack inside. Inside the fanny-pack was Sharp's identification and financial cards, as well as a foil package with green vegetation that would later be confirmed to be marijuana.

Sharp was subsequently charged with one count of felony possession of marijuana with two prior convictions, a severity level 5 drug felony, under K.S.A. 21-5706(c)(3)(C).

4

Sharp filed a pretrial motion to suppress, claiming Deputy Johnson did not have the authority to stop a commercial motor vehicle for random inspection, absent reasonable suspicion of a crime. Sharp relied on K.S.A. 74-2108(b), arguing that only the KHP has the authority to stop commercial motor vehicles for the sole purpose of conducting an inspection. Sharp acknowledged that K.A.R. 82-4-2a (2022 Supp.) allows authorized agents and representatives to conduct inspections but argued that the regulation did not allow authorities other than the KHP to stop vehicles to conduct inspections without reasonable suspicion. Sharp argued that Deputy Johnson's stop, as well as the subsequent search, were unreasonable, and the evidence found should be suppressed.

The State filed a response arguing that the stop was reasonable. The State maintained that the regulations for commercial vehicle inspections should not be narrowly interpreted, and that Deputy Johnson was an authorized agent permitted to conduct a commercial motor vehicle stop for the sole purpose of an inspection.

A hearing on Sharp's motion to suppress was held on May 18, 2023. During the hearing, KHP Trooper Nicholas Wright testified about his experience as a commercial vehicle training coordinator. Trooper Wright discussed a partnership between the KHP and other law enforcement agencies governed by a "Memorandum of Understanding" (MOU). Trooper Wright also clarified that stops for commercial motor vehicle inspections are performed based upon a reasonable belief by the inspector that the vehicle in question is a commercial motor vehicle—even with no observed violations. The hearing was bifurcated and concluded on June 30, 2023. At the conclusion of the hearing, the district court denied Sharp's motion to suppress:

> "And the Court—and we went through the Chapter 66, the Kansas Corporation
> Commission, and then specifically the statute, K.S.A. 74-2108 and the Kansas Highway
> Patrol which specifically allows for authorized agents to be able to do that. And I don't

5

think that Ms. Adams is arguing that point. Her point is that her reading of the statute is that they don't have the authority to randomly make that stop without some other sort of violation that they would see. And I understand the point, and she's done a good job of noting that for the record. But the Court's reading of the administrative regulations, which are K.A.R. 82-4-2a and 82-4-1, reading those two administrative regulations and K.S.A. 74-2108, I'm going to deny the defense motion to suppress. I understand the point that they are making in her reading of the statute, but I don't believe that my reading of that would make sense if it would give the authority for a deputy sheriff who is trained in commercial inspections to only do that if they stopped for a traffic violation as opposed to other random stops like highway patrol officers do. So the Court is going to consider the defense motion to suppress, and it will be denied."

After the district court denied the motion to suppress, the case proceeded to a bench trial where the court adopted stipulated facts. Within this trial, Sharp again objected to the denial of his motion to suppress. The parties stipulated that the lab report from the Johnson County Sheriff's Office Criminalistics Laboratory identified the green vegetation substance discovered by Deputy Blake as marijuana. At trial, the parties also stipulated that Sharp had two prior convictions for possession of marijuana. Additionally, the parties requested that the district court take judicial notice of the preliminary hearing, the motion to suppress hearing, Sharp's motion to suppress and supplemental brief in support of motion to suppress, and the State's response to the motion to suppress.

The district court found Sharp guilty. Sharp was sentenced to 15 months in prison, which was suspended, and Sharp was ordered to complete 12 months of probation. Sharp timely appeals.

ANALYSIS

DID THE DISTRICT COURT ERR IN DENYING SHARP'S MOTION TO SUPPRESS?

On appeal, Sharp first argues that the district court erred in denying his motion to suppress the marijuana located within the seized motor vehicle.

*Standard of Review*

On a motion to suppress, an appellate court generally reviews the district court's findings of fact to determine whether they are supported by substantial competent evidence and reviews the ultimate legal conclusion de novo. *State v. Garrett*, 319 Kan. 465, 469, 555 P.3d 1116 (2024). When the material facts supporting a district court's decision on a motion to suppress evidence are not in dispute, the ultimate question of whether to suppress is a question of law over which an appellate court has unlimited review. *State v. Mendez*, 319 Kan. 718, 735-36, 559 P.3d 792 (2024).

*Constitutional Framework*

The Fourth Amendment to the United States Constitution guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. Section 15 of the Kansas Constitution Bill of Rights provides similar protection from unlawful searches and seizures.

A seizure occurs when there is a "'show of authority which, in view of all the circumstances surrounding the incident, would communicate to a reasonable person that he or she is not free to leave and the person submits to the show of authority.'" *State v. Smith*, 286 Kan. 402, 406, 184 P.3d 890 (2008). A traffic stop is a seizure under the Fourth Amendment. *State v. Thompson*, 284 Kan. 763, 773, 166 P.3d 1015 (2007). "The

7

State bears the burden to demonstrate that a challenged search or seizure was lawful." *State v. Moore*, 283 Kan. 344, 349, 154 P.3d 1 (2007).

Neither party disputes that a traffic stop occurred in this case, and the State agrees that a search and seizure of the commercial motor vehicle occurred. The specific question in this case is whether that stop, and the resulting search and seizure, was reasonable. "Because the Fourth Amendment only forbids 'unreasonable' seizures, reasonableness is the touchstone for analysis of whether a seizure is constitutionally permissible." *State v. Reiss*, 299 Kan. 291, 297, 326 P.3d 367 (2014).

Traffic stops typically require, at a minimum, reasonable suspicion of criminal activity. *Terry v. Ohio*, 392 U.S. 1, 30-31, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968); K.S.A. 22-2402(1). But here, the parties agree that the deputy had no reasonable suspicion of any criminal activity when he stopped the truck.

Because there was no reasonable suspicion of criminal activity, and there was no warrant to search the vehicle, the legality of the stop and subsequent search hinges on whether an exception exists to the general rule that warrantless searches are per se unreasonable. *State v. Heim*, 312 Kan. 420, 422-43, 475 P.3d 1248 (2020). "Those recognized exceptions are: 'consent; search incident to a lawful arrest; stop and frisk; probable cause plus exigent circumstances; the emergency doctrine; inventory searches; plain view or feel; and administrative searches of closely regulated businesses.'" *State v. Sanchez-Loredo*, 294 Kan. 50, 55, 272 P.3d 34 (2012). Here, the State argues that the administrative search exception applies. Lawful administrative searches of commercial motor vehicles do not violate the Fourth Amendment. *State v. Crum*, 270 Kan. 870, 877, 19 P.3d 172 (2001).

For a warrantless administrative search to be lawful, it must follow the parameters set by the United States Supreme Court in *New York v. Burger*, 482 U.S. 691, 107 S. Ct. 2636, 96 L. Ed. 2d 601 (1987):

"This warrantless inspection, however, even in the context of a pervasively regulated business, will be deemed to be reasonable only so long as three criteria are met. First, there must be a 'substantial' government interest that informs the regulatory scheme pursuant to which the inspection is made." 482 U.S. at 702.

"Second, the warrantless inspections must be 'necessary to further [the] regulatory scheme.'" 482 U.S. at 702 (quoting *Donovan v. Dewey*, 452 U.S. 594, 600, 101 S. Ct. 2534, 69 L. Ed. 2d 262 [1981]).

"Finally, 'the statute's inspection program, in terms of the certainty and regularity of its application, [must] provid[e] a constitutionally adequate substitute for a warrant.' Ibid. In other words, the regulatory statute must perform the two basic functions of a warrant: it must advise the owner of the commercial premises that the search is being made pursuant to the law and has a properly defined scope, and it must limit the discretion of the inspecting officers." 482 U.S. at 703 (quoting *Donovan,* 452 U.S. at 600).

Keeping this standard in mind, we now consider whether any of the statutes or regulations relied upon by the State permitted Deputy Johnson to lawfully stop the commercial motor vehicle at issue in this case.

*K.S.A. 74-2108(b)*

The parties agree that an administrative search of a commercial motor vehicle may be lawfully made by a KHP trooper under the authority of K.S.A. 74-2108(b):

"In addition to the general power and authority prescribed by subsection (a), the superintendent and members of the Kansas highway patrol are hereby authorized and directed to execute and enforce the laws of this state relating to public and private motor

9

carriers of passengers or property, including any rules and regulations relating to such laws, and shall have the power and authority to require the driver of any motor vehicle owned or operated by any such carrier to stop and submit such vehicle to an inspection to determine compliance with such laws and rules and regulations."

Within this statute is the specific provision that allows the KHP the authority "to require the driver of any motor vehicle owned or operated by any such carrier *to stop* and submit such vehicle to an inspection to determine compliance with such laws and rules and regulations." (Emphasis added.) K.S.A. 74-2108(b). Not only does this statute authorize a KHP trooper to conduct an inspection of motor carriers of persons or property, it specifically authorizes a KHP trooper to conduct a *stop* to conduct that inspection. No reasonable suspicion of a crime is required.

The constitutionality of K.S.A. 74-2108(b) has already been considered and confirmed by the Kansas Supreme Court. *State v. Crum*, 270 Kan. 870, 871, 877, 19 P.3d 172 (2001). There are no issues before us that require us to conduct an analysis of this statute under *Burger*. 277 Kan. at 877.

But Deputy Johnson is not a KHP trooper, and K.S.A. 74-2108(b) does not explicitly grant him the authority to stop and inspect commercial vehicles. However, the State asserts that when read together, K.S.A. 74-2108(b), K.A.R. 82-4-1(c) (2022 Supp.), and K.A.R. 82-4-2a (2022 Supp.) operate to authorize others in addition to the KHP to stop commercial motor vehicles without reasonable suspicion as part of a lawful administrative search.

*K.A.R. 82-4-1(c) (2022 Supp.) and K.A.R. 82-4-2a (2022 Supp.)*

We start with the context of these regulations. The Kansas Legislature granted the Kansas Corporation Commission "full power, authority and jurisdiction to supervise and control motor carriers as defined in 49 C.F.R. § 390.5." K.S.A. 66-1,108b.

10

And K.S.A. 66-1,129 authorized the Kansas Corporation Commission to adopt rules and regulations, "necessary to carry out the provisions of this act," including the specific authority to adopt "[m]otor carrier transportation requirements that are consistent with continuation of the federal motor carrier safety assistance program and other federal requirements concerning transportation of hazardous materials." K.S.A. 66-1,129.

Moreover, the Kansas Legislature signaled its intent to grant broad authority to the Kansas Corporation Commission as to the regulation of motor carriers in K.S.A. 66-1,108a:

> "As applied to the regulation of motor carriers, the provisions of this act and all grants of power, authority and jurisdiction herein made to the state corporation commission shall be liberally construed, and all incidental powers necessary to carry into effect the provisions of this act are expressly granted to and conferred upon the state corporation commission." K.S.A. 66-1,108a.

Keeping that statutory authority in mind, we turn to the Kansas Administrative Regulations at issue. Kansas Administrative Regulations have the full force and effect of law. K.S.A. 77-425.

First, the State argues that Deputy Johnson was an authorized agent or representative who was permitted to stop and inspect a commercial motor vehicle. The terms "authorized agent" or "authorized representative" as used in connection with regulations concerning motor carriers are defined in K.A.R. 82-4-1(c) (2022 Supp.):

> "The following terms used in connection with the regulations of the state corporation commission governing motor carriers shall be defined as follows:
> . . . .
> "(c) 'Authorized agent' and 'authorized representative' mean any authorized special agent or employee of the commission, any member of the Kansas highway patrol, or any law enforcement officer in the state certified in the inspection of motor carriers

11

and authorized in accordance with the requirements of the Kansas motor carrier safety program." K.A.R. 82-4-1(c) (2022 Supp.).

Neither party disputes that Deputy Johnson was an authorized agent or representative under this regulation. Deputy Johnson received specialized training in inspection of commercial motor vehicles and maintained active certification.

We turn next to K.A.R. 82-4-2a (2022 Supp.) to determine Deputy Johnson's actual authority as an authorized agent or representative:

"The special agents, agents, employees, or representatives authorized by the commission shall have the authority to perform the following:

"(a) Examine motor carrier equipment operating on the highways in this state;

"(b) enter upon any motor carrier's premises located in Kansas and inspect and examine the motor carrier's records, books, and equipment located on the premises;

"(c) examine the manner of the motor carrier's conduct as it relates to the public safety and the operation of commercial motor vehicles in this state; and

"(d) declare or place, or both, any commercial motor vehicle, driver, or motor carrier 'out-of-service' for any 'out-of-service' conditions as defined in K.A.R. 82-4-1. Authorized personnel shall declare and mark as out-of-service any commercial motor vehicle, driver, or motor carrier that by reason of its mechanical condition or loading would likely cause an accident or a breakdown or is in violation of any commission economic or safety regulations or 'out-of-service' criteria as defined in K.A.R. 82-4-1. An 'out-of-service vehicle' sticker shall be used to mark each vehicle and any intermodal equipment as out-of-service." K.A.R. 82-4-2a (2022 Supp.).

The State urges us to interpret K.A.R. 82-4-2a (2022 Supp.) to allow Deputy Johnson to both *stop* and *inspect* a commercial motor vehicle. There are several reasons why this interpretation is not legally correct.

12

*The plain language of the regulation controls.*

First, the language of K.A.R. 82-4-2a (2022 Supp.) does not specifically provide for a "stop" of a motor carrier. If a statute is plain and unambiguous, appellate courts will not speculate about legislative intent or turn to canons of construction or legislative history. See *State v. Reese*, 300 Kan. 650, 653, 333 P.3d 149 (2014); *State v. Keys*, 315 Kan. 690, 698, 510 P.3d 706 (2022). "As with statutes, the court must give effect to the intent expressed by the plain and unambiguous language in the regulation." *Pener v. King*, 305 Kan. 1199, 1208, 391 P.3d 27 (2017).

The language of K.A.R. 82-4-2a (2022 Supp.) allows for examination of motor carrier equipment operating on highways, entering any motor carrier's premises, examining the motor carrier's conduct, and declaring motor drivers or carriers "out of service." But the regulation does not specifically allow for the "stop" of an operating motor vehicle. In comparison, K.S.A. 74-2108(b) specifically provides that a KHP trooper may require a commercial vehicle driver "*to stop* and submit such vehicle to an inspection." (Emphasis added.) K.S.A. 74-2108(b). The Kansas Corporation Commission did not include the ability for its agents to "stop" a vehicle in the plain language of the regulation. But the Kansas Legislature specifically granted the KHP that ability in K.S.A. 74-2108(b).

Next, we return to the administrative search test described in *Burger,* 482 U.S. at 702-03, and apply it to K.A.R. 82-4-2a (2022 Supp.). *Burger* described the requirements necessary for a lawful, statutorily provided, administrative search. "First, there must be a 'substantial' government interest that informs the regulatory scheme pursuant to which the inspection is made." 482 U.S. at 702. There is no dispute here that regulation of commercial motor carriers triggers a substantial government interest.

13

"Second, the warrantless inspections must be 'necessary to further [the] regulatory scheme.'" 482 U.S. at 702. Again, neither party argues that commercial motor vehicle inspections are unnecessary.

But the crux of Sharp's argument arises within the third prong of the *Burger* test:

> "'the statute's inspection program, in terms of the certainty and regularity of its application, [must] provid[e] a constitutionally adequate substitute for a warrant.' In other words, the regulatory statute must perform the two basic functions of a warrant: it must advise the owner of the commercial premises that the search is being made pursuant to the law and has a properly defined scope, and it must limit the discretion of the inspecting officers." 482 U.S. at 702-03.

Sharp's specific argument under the third prong of *Burger* is that K.S.A. 74-2108(b) contains a carefully limited vehicle inspection scheme—the scope of which was approved in *Crum*. See 270 Kan. at 871, 877. Sharp argues that expanding that scheme to allow others than the KHP to make stops of commercial motor vehicles under the administrative search exception would violate the scope of that scheme under *Burger*.

Sharp urges us to find that *State v. Williams*, 8 Kan. App. 2d 14, 648 P.2d 1156 (1982), conclusively established that the KHP is the only entity authorized to stop motor carriers for the purpose of conducting a vehicle inspection.

> "The Kansas Highway Patrol is apparently the only law enforcement agency authorized to make random spot checks of vehicles which are subject to KCC regulations. (Any agent or employee of the revenue department or Kansas Corporation Commission is also authorized by K.S.A. 66-1319 and K.A.R. 1981 Supp. 82-4-2 to inspect such vehicles, but they are not specifically authorized to stop moving vehicles in order to do so.)" 8 Kan. App. 2d at 20.

14

But the identity of "who" can make random stops of commercial vehicles was simply not the issue in *Williams*. Williams challenged the constitutionality of the *randomness* of the spot checks. In *Williams*, it was undoubtedly the KHP who made the stop, unlike the present case. Yet, the case still notes the limited persons allowed to conduct the stop under K.S.A. 74-2108(b):

"We have before us a factual situation in which a limited number of defined persons (members of the Kansas Highway Patrol) is authorized to make spot checks of pervasively regulated commercial businesses to insure compliance with regulations furnished to them by the state. The inspector's authority is limited to determining [whether] there is compliance with the law and the rules and regulations furnished to and known by the commercial business being inspected." 8 Kan. App. 2d at 22.

While *Williams* did not conclusively settle the issue of who may conduct an inspection under K.S.A. 74-2108(b), the case does point out that K.S.A. 74-2108(b) limits and defines who may stop and perform a commercial motor vehicle inspection, which is relevant to our consideration of scope under the third *Burger* prong.

In contrast to K.S.A. 74-2108(b), K.A.R. 82-4-1(c) (2022 Supp.) includes multiple categories of people as "authorized agents" or "authorized representatives." K.A.R. 82-4-1(c) (2022 Supp.) includes "any authorized special agent or employee of the commission, any member of the Kansas highway patrol, or any law enforcement officer in the state certified in the inspection of motor carriers and authorized in accordance with the requirements of the Kansas motor carrier safety program." Under K.A.R. 82-4-1(c) (2022 Supp.), an authorized agent or authorized representative might be a law enforcement officer, but they are not required to be. In fact, employees of the Kansas Corporation Commission, who are not necessarily law enforcement officers, are included in the definition. In Kansas, the power to stop a subject reasonably suspected of committing a crime has traditionally been reserved for law enforcement officers. See K.S.A. 22-2402 (a law enforcement officer may stop a person in a public place based on reasonable

15

suspicion of a crime). But the State's interpretation of K.A.R. 82-4-1(c) (2022 Supp.) would include special agents and employees of the Kansas Corporation Commission as people authorized to stop commercial motor vehicles on a Kansas highway, without any requirement that they be KHP troopers or law enforcement officers. While these additional groups of people might be properly authorized to examine a commercial motor vehicle, there is no legal basis to provide them with the authority to *stop* a commercial motor vehicle. The State's interpretation of K.A.R. 82-4-1(c) (2022 Supp.) and K.A.R. 82-4-2a (2022 Supp.) does not lead to reasonable results. And it would also broadly expand the scope of the administrative search scheme for commercial motor vehicles in Kansas.

*K.S.A. 66-1324*

Another Kansas statute demonstrates the Kansas Legislature's intent to limit the authority to stop commercial motor vehicles without reasonable suspicion solely to the KHP. K.S.A. 66-1324 controls when commercial motor vehicles are required to stop at inspection stations:

"The superintendent of the Kansas highway patrol shall have authority to regulate the operation of motor carrier inspection stations under the superintendent's supervision and control, including, when necessary to the enforcement of any laws relating to the operation or registration of motor carriers within this state, the authority to require all motor carriers, trucks or truck tractors to stop at any such inspection station to submit to inspection for compliance with any of the laws which the superintendent is charged by this act with the duty to enforce. Whenever the superintendent shall require motor carriers, trucks or truck tractors to stop at any inspection station, the superintendent shall cause to be displayed on the highway on which such inspection station is located, an illuminated sign or other device indicating such requirement. No motor carrier, truck or truck tractor shall be required to stop for inspection at any motor carrier inspection station which is not displaying the sign hereinabove provided for. Nothing in this section shall be construed to relieve any person of the duty to stop at any motor carrier inspection station

16

when it is necessary for such person to register under or comply with any of the laws of this state, or rules and regulations adopted thereunder, relating to the size, weight and load of motor vehicles and trailers, motor vehicle registration laws, registration and insurance laws and requirements of the state corporation commission, motor fuel use tax laws, liquid fuel carriers tax laws or livestock inspection laws. No motor carrier, truck and truck tractor which is required to be registered under the provisions of K.S.A. 66-1,139, and amendments thereto, shall be required to stop for clearance inspection at any open motor carrier inspection station before entering or traveling through this state, if such vehicle:

"(a) Has a valid annual registration with the state corporation commission under the provisions of K.S.A. 66-1,139, and amendments thereto;

"(b) is in current compliance with the vehicle registration laws prescribed in chapter 8 of Kansas Statutes Annotated; and

"(c) is in current compliance with the motor fuel tax laws prescribed by article 34 of chapter 79 of Kansas Statutes Annotated.

"*Nothing in this section shall be construed as prohibiting the superintendent of the highway patrol or any member of the state highway patrol from stopping any or all motor carriers, trucks or truck tractors for the purpose of conducting spot checks to insure compliance with any state law relating to the regulation of motor carriers, trucks or truck tractors*. Any person violating any of the provisions of this section, upon conviction thereof, shall pay a fine in accordance with K.S.A. 8-2118, and amendments thereto." (Emphasis added.) K.S.A. 66-1324.

Here again, the Kansas Legislature has used clear and unambiguous language to identify the KHP as the only entity capable of stopping motor carriers, trucks, or truck tractors for the purpose of conducting random spot checks. And the context of this statute is noteworthy. K.S.A. 74-2108(b) is the other statute identified by the parties that specifically authorizes the KHP to stop commercial vehicles to conduct administrative searches. Article 21 of Chapter 74 contains only statutes that pertain to the regulation and authority of the KHP. An argument could be made that only the KHP appears in K.S.A. 74-2108(b) because the entire article pertains to the KHP. But K.S.A. 66-1324 confirms

17

the intent of the Legislature, and Article 13 of Chapter 66 pertains to motor carriers generally. Certainly, within the regulation of motor carriers generally, the Kansas Legislature could have authorized additional law enforcement agencies beyond the KHP if that was its intent. In both K.S.A. 74-2108(b) and K.S.A. 66-1324, the Kansas Legislature designated the KHP as the only entity with the authority to stop a commercial motor vehicle, without reasonable suspicion, for the purpose of an administrative search. Interpreting K.A.R. 82-4-2a (2022 Supp.) to allow people other than KHP troopers to conduct a stop for the purpose of a commercial motor vehicle inspection would violate the intent of those two statutes. "Administrative regulations must follow the law to be valid, and they cannot contravene a controlling statute." *Bruce v. Kelly*, 316 Kan. 218, 254, 514 P.3d 1007 (2022).

The Kansas Legislature has carefully limited the power to stop commercial vehicles without reasonable suspicion to the KHP. In doing so, the Legislature limited the scope of the administrative search exception in Kansas, which is required under *Burger*. 482 U.S. at 702-03. The Kansas Supreme Court has confirmed the constitutionality of this scheme in *Crum.* 270 Kan. at 877. Adopting the State's interpretation of K.A.R. 82-4-1(c) (2022 Supp.) would ignore the Legislature's intent to properly address the issue of scope. Accordingly, we hold that K.A.R. 82-4-1(c) (2022 Supp.) does not extend the power to stop motor carriers without reasonable suspicion for the purpose of an inspection beyond the KHP.

*Memorandum of Understanding*

Additionally, the State argues that a Memorandum of Understanding (MOU) between the Johnson County Sheriff's Department and the KHP allowed Deputy Johnson to stop Sharp's vehicle. The State relies on K.S.A. 74-2108(b)—the statute that gives the KHP the power to stop and inspect motor carriers—and K.S.A. 22-2401a(h)(1), a statute

that pertains to the jurisdiction of law enforcement officers. K.S.A. 22-2401a(h) provides:

"(h) All law enforcement officers not otherwise provided statewide jurisdiction may exercise the powers and authority of law enforcement officers anywhere when:

(1) A request for assistance has been made by law enforcement officers from the area for which assistance is requested;

(2) in fresh pursuit of a person;

(3) transporting persons in custody to an appropriate facility, wherever such facility may be located; and

(4) investigating a crime that occurred within the law enforcement officer's jurisdiction, with appropriate notification to and coordination with a local law enforcement agency with jurisdiction where the investigation is to be conducted." K.S.A. 22-2401a(h).

The State's argument is misplaced. K.S.A. 22-2401a(h) pertains to the territorial jurisdiction of certain law enforcement officers. Nothing in this statute grants any kind of power to a law enforcement officer who does not otherwise possess that power. "An appellate court merely interprets the language as it appears; it is not free to speculate and cannot read into the statute language not readily found there." *State v. Breedlove*, 285 Kan. 1006, Syl. ¶ 5, 179 P.3d 1115 (2008).

The MOU itself does not support the State's argument. The MOU contains three agreements between the parties:

- "The Kansas Highway Patrol Motor Carrier Safety Assistance Program (MCSAP) personnel will inspect CMV's operating over public highways and at carrier terminal facilities."

- "Other allied agencies (i.e., police departments and sheriff offices) will, as a routine practice, confine inspection activities to vehicles operating over public highways within their jurisdiction."

- "The Kansas Highway Patrol MCSAP commander or designee may solicit allied agencies to participate in consolidated efforts during

19

special roadside inspection activities and training programs. If solicited, training will be at the allied agencies' discretion."

The remaining language of the MOU explains how these agreements are to be implemented. Without delving into whether the power to stop in this case would be properly delegable, there is simply no language in the MOU that delegates the ability of the KHP to *stop* motor carriers, without reasonable suspicion, to the Johnson County Sheriff's Department. We find that the MOU between the KHP and the Johnson County Sheriff's Department did not authorize Deputy Johnson's stop of the commercial motor vehicle in this case under the administrative search exception.

*Waiver*

The State has waived any argument that Sharp has no individual right to contest the search. Within the statutory timeframe of Supreme Court Rule 6.09(a)(2) (2025 Kan. S. Ct. R. at 40), the State filed a letter of additional authority. This rule prohibits submitting new issues or arguments. In its letter, the State seeks to raise an additional issue, arguing that K.S.A. 74-2108(b) does not provide Sharp with the substantive right to argue for suppression of the evidence. In making the argument, the State relies on *State v. Vrabel*, which states that the statutory authority prescribed to law enforcement officers is for the protection of the community rather than creating an individual right to defendants. 301 Kan. 797, 813, 347 P.3d 201 (2015). Therefore, the State contends that the stop conducted by Deputy Johnson was within the bounds of his authority, and this authority does not present an individual right for Sharp to contest.

Rule 6.09 letters are reserved for citing significant relevant authority not previously cited that comes to a party's attention after briefing. See *State v. Tague*, 296 Kan. 993, 1010, 298 P.3d 273 (2013). Using a subsequent Rule 6.09 to advance a legal argument violates the rule's purpose. *State v. Weber*, 309 Kan. 1203, 1208, 442 P.3d 1044 (2019) (The Kansas Supreme Court found that the State's additional argument raised in a

20

Rule 6.09 letter had been waived because such letters are reserved for citing relevant authorities not previously cited in a party's brief.). Therefore, the State has waived this argument.

*Mistake of Law*

Additionally, the mistake of law argument advanced by the State is unpreserved. The State argues for the first time on appeal that even if this court were to find that Officer Johnson's conduct was unreasonable, the search can be deemed lawful due to a mistake of law. According to the State, Deputy Johnson's actions in stopping the commercial motor vehicle were legal because a reasonable officer trained as a Kansas certified motor vehicle inspector would have believed that they had the authority to stop the vehicle based on the language of K.A.R. 82-4-2a (2022 Supp.).

Sharp filed a reply brief, arguing that we should not address this argument because the State raises it for the first time on appeal. Generally, a party may not raise a new issue on appeal. *State v. Godfrey*, 301 Kan. 1041, 1043, 350 P.3d 1068 (2015). However, there are exceptions to this rule when (1) the newly asserted claim involves only a question of law arising on proved or admitted facts and is determinative of the case; (2) consideration of the claim is necessary to serve the ends of justice or to prevent the denial of fundamental rights; or (3) the district court is right for the wrong reason. *State v. Spotts*, 288 Kan. 650, 652, 206 P.3d 510 (2009); *State v. Dukes*, 290 Kan. 485, 488, 231 P.3d 558 (2010). A party must argue why this court should consider an unpreserved issue for the first time on appeal. *Hilburn v. Enerpipe Ltd.*, 309 Kan. 1127, 1164, 442 P.3d 509 (2019) (Luckert, J., dissenting); Supreme Court Rule 6.02(a)(5) (2025 Kan. S. Ct. R. at 36). However, the State failed to brief whether an exception to our preservation rule applies.

21

Even if the State had presented an exception, our review remains prudential. "Nevertheless, our review is prudential, and even if an exception may apply, we may still decline to review the question." *State v. Mendez*, 319 Kan. 718, 730-31, 559 P.3d 792 (2024) (citing *State v. Gray*, 311 Kan. 164, 170, 459 P.3d 165 [2020] ["Even if an exception would support a decision to review a new claim, we have no obligation to do so."]).

Here, the State has offered no explanation as to why it failed to raise this argument before the district court. The preservation requirement "ensures that trial courts have the first opportunity to address and resolve issues, promotes judicial efficiency, and prevents unfair surprises to the opposing party." *State v. Jelinek*, 66 Kan. App. 2d 158, 163, 577 P.3d 662 (2025). Because the State failed to raise this argument, Sharp had no opportunity to address it at the district court level. We decline to consider the State's mistake of law argument.

*Conclusion*

We conclude that in Kansas, the only entity currently authorized to stop a commercial motor vehicle without reasonable suspicion under the administrative search exception is the KHP. Because Deputy Johnson is not a member of the KHP, his stop of the vehicle in which Sharp was a passenger was unreasonable, and the search of the vehicle that followed, illegal.

"When the State fails to demonstrate the lawfulness of a challenged search or seizure, the evidence obtained in violation of the defendant's rights under the Fourth Amendment may be suppressed through application of the exclusionary rule." *State v. Talkington*, 301 Kan. 453, 484, 345 P.3d 258 (2015). The State fails to argue that the exclusionary rule should not operate to exclude the evidence if we find a violation exists.

Thus, in this case, the evidence obtained as a result of the illegal search and seizure must be suppressed. See *State v. Cleverly*, 305 Kan. 598, 614, 385 P.3d 512 (2016).

For the above reasons, we find the State failed to meet its burden of proof to show that Deputy Johnson's stop was reasonable and lawful. We also find that the district court erred in denying the motion to suppress. Because we reverse the district court's denial of Sharp's motion to suppress, we need not consider his second argument pertaining to the sufficiency of evidence supporting the classification of his offense as a felony.

Reversed.